Ruby J. MERZ, Appellant-Plaintiff,

v.

FIRST NATIONAL BANK OF FRANK-
LIN COUNTY, Respondent-Defendant.

No. 48220.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 4, 1984.

Robert J. Gaddy, St. Louis, for appellant-plaintiff.

David L. Baylard, Kenneth B. Dopuch, Briegel, Dempsey, Baylard & Patane, P.C., Union, for respondent-defendant.

DOWD, Presiding Judge.

Appellant Ruby J. Merz appeals an adverse decree rendered in a declaratory judgment action. Merz filed such an action seeking a declaration of her rights and liabilities on a promissory note secured by a deed of trust held by the respondent First National Bank of Franklin County (hereinafter referred to as bank). The lower court declared that the bank was entitled to charge the rate of interest based upon changes in the real estate mortgage rates pursuant to and within the limits contained in the contemporaneously executed Federal Truth-in-Lending Statement (hereinafter referred to as FTLS). We affirm.

This appeal presents the single issue of whether as a matter of law the trial court erred in making the declaration stated above. The appellant offers many theories to sustain her contention that her note contains a fixed rate of interest which could not fluctuate with market interest rates on real estate mortgages. Appellant's principal contention is that since both the note and FTLS were drafted by the bank and they contain ambiguous clauses, they are

to be construed against it. Appellant asserts that the ambiguous clauses are those which permit the bank to vary the interest rate on the note. Conversely, the bank relies on these documents and its policies concerning them to negate any ambiguities. The promissory note and the FTLS were signed by the appellant and her late husband.[1] A succint rendition of the facts will illuminate the controversy before this court.

In May 1978, Kenneth and Ruby Merz secured financing with the respondent to build a home in Franklin County, Missouri. The financing consisted of a construction and permanent loan. A commitment letter dated May 4, 1978, sent by the bank to the Merzes indicated that the terms of the permanent financing would be as follows: "The permanent loan in the amount of $65,000.00 will be authorized over 20 years at 9.5% rate." However, the promissory note and the FTLS, both dated December 15, 1978, indicated a 9.25% rate. Moreover, the promissory note contain a typewritten clause located just to the left of the maker's signatures that read: "The Bank shall have the right to change the interest rate upon 30 days notice to the maker. The authorized payment will be accordingly." Further, the FTLS contained a printed clause, to wit:

> First State Bank reserves the right to change interest rates from time to time. Any change shall be at the discretion of the bank, but would be changed only at such time that Real Estate Mortgage rates have differed appreciably from rate being charged the borrower. The maximum amount of any such change shall be one percent and the minimum amount of one-half percent.

The bank's former president, William Stuart, testified for the appellant. Stuart, who had personally handled the closing of the loan, testified that the ¼% difference between interest rate stated in the commitment letter and the other two documents arose out of an agreement. The Merzes induced the bank to lower the interest rate

by ¼% by offering to deposit their business accounts with it. Stuart testified further that only the Merzes and he were present when the permanent loan was closed. At the closing, Stuart explained to the Merzes that the bank was reserving the right to change the interest rate from time to time. He also informed them of the bank's policy to review the rate every three years and to possibly make an adjustment of 1% to the interest rate. After the discussion on this topic, the Merzes signed the promissory note, FTLS, and the deed of trust.

At the time of this closing, the bank was shifting from three-year balloon notes to a form of adjustable rate mortgages. Even though the form of financing changed, the substance did not. Substantively, the bank reviewed all notes every three years. Based upon that review, the bank would adjust the interest rate to reflect current market trends.

The bank's current vice-president, Russel Kavsteiner, was called to testify for it. He corroborated Stuart's testimony concerning the bank's policy of periodically reviewing all notes. He also added that the bank only exercised its discretion when the interest rates in the local marketplace differed by at least two percent from the current rate on the note. This meant that the interest rate could decrease as well as increase depending on the trend in real estate mortgage rates in the area.

Initially, we note that *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) governs our review of this non-jury trial. Thus, we may only reverse the trial court if its judgment is unsupported by or against the weight of the evidence, or is based on erroneous declaration or application of the law. Considering the nature of the seminal issue in this case, our review will be limited to the law of the case.

A promissory note is a written contract for the payment of money. *Sabine v. Leonard*, 322 S.W.2d 831, 837–8 (Mo. banc 1959). *See also* Calamari and Perillo Contracts 17 (2d ed. 1979). When dealing with

---

**1.** Kenneth R. Merz, the appellant's late husband, died after the trial in this action.

a promissory note, a court must first turn its attention to Article 3 of the Uniform Commercial Code, § 400.3–101 et. seq. RSMo 1978.[2] However, it must remain cognizant that general principles of law and equity supplement the particular provisions of the Uniform Commercial Code. § 400.1–103.

 The appellant contends that her promissory note contains an ambiguous clause permitting the respondent to alter the interest rate on the note upon 30 day's notice. Since the bank drafted the note, the clause should be construed against it. Her argument must fail simply because the clause is not ambiguous. An ambiguity does not arise from a contract merely because the parties disagree as to how the contract should be construed. *Buder v. Martin*, 657 S.W.2d 667, 669 (Mo.App. 1983). A contract is said to be ambiguous if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of them. *Friedman Textile Co. v. Northland Shopping Center, Inc.*, 321 S.W.2d 9, 15 (Mo.App.1959). A simple reading of the controversial provision of the note reveals no ambiguity to this court.

Even though a contract is not ambiguous, the intent of the contracting parties may be unascertainable from the face of the document. Here the appellant contends that the FTLS does not affect the validity or enforceability of any term or provision of the promissory note citing 15 U.S.C. 1610(d) (1982). However, this court seeks a determination of the contracting parties' intent concerning their use of this clause. In searching for the intent of the parties the entire instrument, subsidiary agreements between the parties and external circumstances which cast light on the intent are considered. *Tri-State Gas Co. v. Kansas City Southern Ry Co.*, 484 S.W.2d 252, 254 (1972). Several instruments made at the same time, and relating to the same subject matter may be read together as one contract and recitals in one may be explained by reference to the other. *Massa-*

*chusetts Bonding and Insurance Co. v. Feutz*, 182 F.2d 752, 757 (8th Cir.1950). *See also* § 400.3–119. Since evidence was adduced indicating that both FTLS and the promissory note were executed contemporaneously, the trial court properly construed the controversial clause of the note in light of the information contained in the FTLS.

Appellant's witness, Stuart, handled the loan negotiations for the bank. His testimony indicated that he explained to the Merzes the affect of these clauses on their loan's interest rate. In view of these facts and the law of the case, we cannot say that the trial court erred as a matter of law. The trial court correctly found that the Merzes negotiated for an adjustable rate loan. The interest rate of such a loan was susceptible to a maximum fluctuation of one percent every three years.

The judgment is affirmed.

CRIST and CRANDALL, JJ., concur.

---

**2.** All statutory references are to RSMo 1978.