merit, and accordingly the judgment is affirmed.

PREWITT, C.J., and MAUS and CROW, JJ., concur.

In the Interest of G.J., a minor,

M.C.J., Plaintiff-Respondent,

v.

J.J., Defendant-Appellant.

No. 50645.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 3, 1986.

Nadine V. Nunn, St. Louis, for defendant-appellant.

Barbara J. Gilchrist, St. Louis, for plaintiff-respondent.

### ORDER

PER CURIAM.

Father appeals from the juvenile court's modification of child custody. We affirm. No jurisprudential purpose would be served by an extended opinion. The parties have been furnished with a memorandum for their information only setting forth the reasons for our order affirming the judgment in accordance with Rule 84.-16(b).

MISSOURI FARMERS ASSOCIATION,
INC. Appellant,

v.

R. Wayne BARRY and Beverly
Barry, Respondents.

No. WD 36619.

Missouri Court of Appeals,
Western District.

June 3, 1986.

count and Retail Charge Agreement. The allegations described an indebtedness for the sale of merchandise, farm supplies, feed, seed and services under a retail credit agreement. The defendants Barry made answer and counterclaim for damages for the negligent mixture of feed. In the course of the action, the counterclaim was stricken without prejudice, and thereafter there was a trial on the petition. The court entered a directed verdict for the defendants at the conclusion of the MFA evidence, and the plaintiff appeals.

The plaintiff MFA owns and operates Exchanges at Eldon and Versailles. The defendants Barry purchased feed and supplies at both exchanges. They had incurred an indebtedness at the Versailles Exchange of some $11,000 by April of 1981, and of $5,329.21 at the Eldon Exchange by October of 1981. In order to arrange for extension of the indebtedness, the Barrys executed a credit application on an MFA form. The form specified the MFA Exchange at Eldon as the site of the credit purchase of "feed, seed, farm supply, misc." The agreement was for a $5,000 line of credit. At the time of the signature, October 23, 1981, in fact, the Barrys were indebted to the MFA Exchange at Eldon for $5,329.21. The application for credit form contained a separate credit agreement guaranty. The terms of that guaranty were that the Barrys pay MFA all accounts, loans and advances of credit, and pay a specified finance charge for any balance unpaid after thirty days, and a specified attorney fee for the cost of collection after maturity. As part of the transaction, the Barrys executed a promissory note for payment of the Eldon Exchange indebtedness. That note was thereafter paid and, according to witness Greeson, manager of the MFA Exchange at Eldon, the note was marked: "Paid in full at the M.F.A., Eldon, Missouri," and the account was closed. The account at the Versailles Exchange, however, was not paid.

MFA brought suit against the Barrys for the $11,000 [and more] owed the Versailles Exchange. The petition pleads for the re-

Kenneth O. McCutcheon, Jr., Versailles, for appellant.

James F. Crews, Tipton, for respondents.

Before SHANGLER, P.J., and TURNAGE and BERREY, JJ.

SHANGLER, Presiding Judge.

The plaintiff Missouri Farmers Association, Inc. [MFA] sued the defendants Barry on a pleading superscribed: Petition on Ac-

covery of that principal indebtedness, a finance charge on the unpaid balance, and for an attorney fee for the collection of the account. That is: the petition pleads the theory that the guaranty of the credit agreement executed by the Barrys on October 23, 1981, encompasses *all* the then subsistent indebtedness between them, the Versailles as well as the Eldon accounts. The court determined that only the Eldon account, and not the Versailles account was contemplated by the credit agreement, that the Eldon account was paid, and accordingly directed a verdict in favor of the Barrys at the conclusion of the MFA evidence. MFA, at the entry of the directed verdict, moved the court nevertheless to allow amendment of the petition to plead an open account on the Versailles indebtedness, but the court refused.

On appeal, MFA contends that there was a jury issue as to whether the credit agreement encompassed both the Eldon and Versailles accounts, and therefore the direction of verdict against the cause of action was error. MFA contends also that the refusal of the court to allow amendment of the petition to plead the open account and to submit the cause of action on that theory was error.

A direction of verdict cannot issue unless reasonable minds, the evidence considered in the light most favorable to the plaintiff, could find only in favor of the defendant. *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 833[3, 4] (Mo. App.1984).

The directed verdict for the defendants Barry came at the conclusion of the case of the plaintiff MFA. The essential MFA evidence consisted of the credit transaction documents, the testimony of MFA Eldon Exchange manager Greeson, MFA retail-credit manager Bennett, MFA credit investigator Sanders, MFA deliveryman Wood, and MFA feed mixer and grinder Holstein. Sanders, Wood and Holstein proved the delivery of materials from the Versailles Exchange to the Barrys, their value, and the existent indebtedness on that account. That testimony does not bear significantly on the validity of the direction of the verdict on the cause of action pleaded—that

the Versailles indebtedness was not encompassed by the terms of the credit agreement and guaranty executed by the Barrys on October 25, 1981.

The court rejected the MFA theory of recovery on the announced ground that the very credit documents allowed only the inference that the transaction of October 23, 1981 extended to the obligation owed by the Barrys to the Eldon Exchange *only:* the application for credit recited that the line of credit was for purchases at the Eldon location, the amount of the credit for which the time for payment was extended by the terms of the documents was the virtual amount owed to the Eldon location, the promissory note executed concurrently with the application for credit/credit [guaranty] agreement was in the exact amount of the Eldon indebtedness, and the payment of the promissory note was entered on the MFA books as the repayment of the account due the Eldon location.

MFA cites the terminology of the credit application/credit guaranty agreement instrument: "this is a continuing agreement, applying to all existing and future transactions between the parties until revoked in writing" to argue that there was sufficient benefit to the Barrys and a sufficient detriment to MFA—and hence consideration—to support the inclusion of the Versailles account in the guaranty of the credit agreement. The extension by MFA of the $5,000 line of credit to the Barrys was in fact, as the testimony of MFA retail-credit manager Bennett clearly establishes, merely a device to transform an open account into a "guaranteed" account—that is, from an account which bears legal interest after due date, into an account payable according to the contract terms and surcharged with a finance fee and an attorney fee. The *quid pro quo* by MFA was to extend the debt until after the first of the next year—about ninety days. The Barrys were already indebted to MFA on the open account at Eldon in the amount of $5,329.21—$5,179.21 of which was delinquent—at the time the application for the $5,000 line of credit was executed. The

credit application and the guaranty of repayment in the credit agreement and the promissory note, to evidence the debt, were all instruments required of the Barrys by MFA—according to Bennett—before the *Eldon* loan could be extended. That the MFA forbearance from the exercise of the legal right of collection suffices for consideration for the *Eldon* transaction is not open to question. *Coffman Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763, 770[6, 7] (Mo.App.1975). The question at the trial, and now on appeal, is simply whether the transaction was intended to transform the Versailles open account into a "guaranteed" account, as at Eldon.

█ The intent to contract is determined from the entire instrument, any subsidiary agreements, and the relevant external circumstances. *Merz v. First National Bank*, 682 S.W.2d 500, 502[3–5] (Mo.App. 1984). Where the contract formation involves multiple instruments which bear on the subject matter of the transaction, the writings are read together as an integer, and the recitals are understood in terms of each other. *Id.* The trial court read the credit, guarantee, and promissory instruments in evidence to intend application to the Eldon account only. The explicit terms of all the instruments in evidence which bear on the transaction, as well as the clear purport of the MFA witness testimony, sustain that determination—and hence the direction of verdict against MFA on that theory.

It is clear, first of all, from the very terms of the instruments that the transaction applied to the Eldon location, and that the written documents expressed the precise intention of the parties. That sense of the transaction is confirmed by the testimony of MFA Eldon manager Greeson who prepared the instruments and presented them to the Barrys for signature:

Q. Now, that amount that you said was owed [as appeared on the credit application], was that at what location?

A. Well, I was responsible for the Eldon location and this covered the portion of the bill that Wayne owed me there at the Eldon, Missouri M.F.A.

Q. Would that include any part that would have been owed at the Versailles location?

A. That wasn't my responsibility.

Q. Was any of that part incurred for that $5,300.00—is that strictly at the Eldon location?

A. Strictly at the Eldon location.

Greeson reconfirmed the scope of the transaction on cross-examination:

Q. You did not attempt to guarantee collateral for the Versailles M.F.A. did you?

A. It wasn't my responsibility.

. . . .

Q. Would you tell me whether or not at the time they signed this agreement, that they had any conversation with you as to whether or not these papers concerned their bill at the Eldon M.F.A.?

A. Well, that was the only reason that I was there too, for this particular bill, yes.

. . . .

Q. Can you tell me, as far as Mr. Wayne Barry is concerned, have you ever had any discussions with him concerning the account at Versailles M.F.A.?

A. Not to my knowledge.

Q. Well, all of the credit extended to Mr. Barry, were they extended upon your behalf at the Eldon M.F.A.?

A. Yes, sir.

Q. And all of those credit extensions has [sic] been paid, is that correct?

A. That is correct.

It is clear also that the purpose of the credit transaction of October 23, 1981—the transformation of the open account to a "guaranteed" account—was to enable the Barrys an extension of ninety days more for payment to MFA. The credit application, however, contains no provision to extend the time for payment; neither does the credit [guaranty] component of that instrument. In fact, the guaranty compo-

nent recites that the account for which the credit was extended becomes delinquent—and hence subject to finance charge and attorney fee for collection—if not paid within thirty days of purchase. The Eldon account and the Versailles account were *both* already delinquent by those terms when the instrument was executed by the Barrys and MFA. Thus, those signatures could not have accomplished the extension of time to repay the account indebtedness—as MFA retail-credit manager Bennett testified was the intention of that instrument, both as to Eldon and Versailles. It was the due date on the promissory note, executed as a concurrent incident of the October 23, 1981 transaction, which extended the time for payment. That note, as all the testimony agrees, embodied the Eldon account as a debt, and that note, as all the testimony agrees, was fully paid. It was the explicit Bennett testimony, moreover, that he offered Barry a note upon the Versailles account [presumably, to extend the time for payment there, and thereby transform that open account, too, into a "guaranteed" account], but Barry refused. It was the Barry contention that some MFA feed had damaged his cattle so that, rather than owing, he was owed.

Q. [D]id M.F.A. ever offer Mr. Barry a note upon the Versailles account?

A. Yes, we did.

Q. Did you offer that in person?

A. Yes, I did.

Q. Where was that offer?

A. Made at the Versailles Exchange.

Q. What did he tell you?

A. At that point he said that he had purchased some feed additives from the California Exchange [and mixed at the Versailles Exchange], and that the feed additive was responsible for the death of some cattle. He felt that we owed him compensation for those cattle.

. . . .

Q. Did you attempt to take his credit application from him at that time?

A. No.

Q. Just the note?

A. Yes, sir.

■ The cause of action for the Versailles indebtedness was pleaded as a claim under the October 23, 1981 credit application/credit [guaranty] agreement, and the evidence asserted recovery for a principal sum, a finance charge, and an attorney fee for the collection. The evidence proved conclusively—and, so as to incur no disagreement among reasonable minds—that the credit application, the credit agreement and inclusive guaranty, as well as the promissory note, were all executed to extend the time for the payment of the Eldon account. That account was paid, and that cause of action was extinguished.

■ This evidence also tendered proof, however, that the Barrys purchased farm supplies and other materials at the Versailles Exchange, the items, the charges, the reasonableness of the charges, and that the account remained unpaid. Thus, quite incidentally to the attempted proof of the pleaded claim under the credit agreement guaranty, the evidence proved, prima facie, a claim not pleaded: a suit on account, an action at law for the recovery of money for services performed or property sold and delivered. *Dahlberg v. Fisse*, 328 Mo. 213, 40 S.W.2d 606, 609[6, 7] (1931). MFA, when denied the pleaded cause of action, moved the court to deem the petition amended by the proof to plead a cause of action on an open account, and to submit the cause to the jury. It was error for the court to have refused the request. Rule 55.33(b) prescribes that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings." The rule also exhorts the court to allow the pleadings to be amended, and to "do so freely when the presentation of the merits of the action will be subserved thereby." The cause of action on account, already implicitly litigated, accomplished an amendment of the pleadings by consent, and was submissible whatever the deficiency of the petition to plead the cause of action. Rule 55.33(b); *Offenbacker v. Sodowsky*, 499 S.W.2d 421, 427[7, 8] (Mo.1973); *J.R. Watkins Co. v.*

*Baker,* 236 S.W.2d 745, 748[4] (Mo.App. 1951).

■ MFA was prejudiced by the refusal of the trial court to submit the cause of action on account. Any recovery on the theory of an account, however, does not encompass an attorney fee or finance surcharge as elements of damage—as the MFA argument intimates. Those accruals of damage were rights of contract—the credit agreement guaranty. The Versailles account, we hold, was not within those terms of agreement, and absent a vestment of right by contract or statute, an attorney fee is not usually an incident of damage. *In re Estate of Zeppenfeld,* 593 S.W.2d 890, 894[8–10] (Mo.App.1979).

The judgment is reversed and the cause remanded.

All concur.