**MISSOURI SAVINGS ASSOCIATION, Appellant,**

v.

**HOME SAVINGS OF AMERICA, Appellee.**

No. 88–1265.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 19, 1988.

Decided Dec. 9, 1988.

*Huddleston v. United States*, — U.S. ——, 108 S.Ct. 1496, 1501–02 (1988) (citation and footnote omitted).

Alan E. Popkin, St. Louis, Mo., for appellant.

Aaron Peck, Los Angeles, Cal., for appellee.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

Missouri Savings Association (MSA) appeals the district court's holding denying it specific performance and damages for breach of a contract entered into by MSA and Republic of Texas Savings Association (Republic). The district court granted summary judgment in favor of Home Savings of America, the successor in interest of Republic, finding that a letter relied upon by MSA did not, as a matter of law, form part of the contract because it was barred by the parol evidence rule. We reverse and remand.

In 1976, Republic and MSA executed a "Loan Participation Agreement" (the Agreement) under which MSA agreed to purchase participating interests in loans originated by Republic. The Agreement was modified by a written amendment signed by both parties and dated July 1, 1976. The amended Agreement provided that Republic was obligated, at MSA's option, to substitute for any loan in default another loan providing an equivalent net yield of interest.

In a letter dated October 4, 1979, and accepted by Republic on October 11, 1979 (the Commitment), MSA agreed to commit to the purchase of a ninety percent participation interest in certain loans. MSA's interest was not to exceed $4,000,000.00,

and Republic was to retain a ten percent interest in these loans. The Commitment also stated that the Agreement was to govern the Commitment.

The parties amended the Commitment with several letters. The first letter, dated October 4, 1979, and received by Republic on October 11, 1979, provided that Republic would "substitute any loan that becomes over ninety (90) days in arrears on an equal yield basis." Republic indicated its acceptance of this amendment by countersigning the letter, as directed by MSA. MSA proffered another modification in a letter dated March 6, 1980. It proposed, among other things, that Republic "must guarantee the 'buyout' provisions on the loans delivered to MSA under the commitment by repurchasing the loans within 30 days of the expiration of the four year term."

Republic rejected this proposed amendment. Instead, it sent a letter dated March 14, 1980, providing in relevant part the following: (1) the Commitment would involve loans on "[i]nvestor-owned condominium[s] and townhouses in [various projects];" and (2) "[e]ach loan is to have a 4 year term with a 30 year amortization and is to be made to David Gayne and A. Dalton Smith, Jr." Instead of the repurchase provision proposed by MSA, however, the March 14 amendment contained a statement that "Republic of Texas Savings Association will furnish David Gayne and Associates a commitment letter," a copy of which was attached, "to make permanent loans to qualified owner/occupants or investor at the end of the four year term." The letter asked MSA to indicate its acceptance of the proposed terms by signing and returning the original. MSA agreed to Republic's amendments and countersigned the letter.

Republic sent MSA another letter, also dated March 14, 1980, which stated in pertinent part the following:

With respect to the $4,000,000.00 loans made on Les Chateaux and MacArthur Townhome project, please be advised that at the end of the four year term, Republic will make qualifying loans to

David Gayne and Associates or qualified assumptors.

This is to assure you that *Republic of Texas Savings Association will have the loan moved at the end of the four year term.* (Emphasis added.)

This letter was executed by Republic's president and its senior vice president, but was not countersigned by MSA. Republic did not request that MSA countersign the original.

Pursuant to the amended Commitment, MSA purchased a ninety percent participation interest in approximately 128 first mortgage loans secured by first liens on various townhouses. In 1981, after the funding of the loans, some of the loans went into default. In 1982, the delinquencies on most of the loans continued, and some of the loans were foreclosed. By the time MSA's participation interest in the loans had terminated in March and April of 1984, some of the loans had been sold to third parties, others had been foreclosed and still others were in force and being paid.

In January of 1982, Republic had merged with Home Savings of America (Home Savings), and Home Savings became legally obligated to perform Republic's duties as Republic's successor in interest. Home Savings received no applications to provide any new financing pursuant to the commitment letter to Gayne. Consequently, no new financing was provided.

When MSA's participation interest in the loans terminated, MSA demanded that Home Savings repurchase MSA's ninety percent interest in the remaining loans. It based its demand on the second March 14 letter, claiming that Republic's statement that it "[would] have the loan moved at the end of the four year term" constituted a promise by Republic to repurchase the loans. Home Savings refused to repurchase the loans.

MSA brought suit against Home Savings for breach of contract seeking specific performance or, in the alternative, damages. Specifically, MSA contended that Home Savings breached a contract entered into between MSA and Republic by failing to do the following: (1) to repurchase from MSA certain participation interests in loans Republic had agreed to repurchase; (2) to provide financing to borrowers to enable MSA's participation interests to be fully paid; and (3) to substitute new loans for loans in default. Home Savings denied that the second March 14 letter was part of the contract, denied that it had breached the contract, and filed a motion for summary judgment.

The district court entered three separate orders regarding Home Savings' motion for summary judgment. In the first order of November 6, 1985, the court granted summary judgment in favor of Home Savings. After MSA moved the court to reconsider its order, the court vacated its grant of summary judgment in favor of Home Savings and granted summary judgment to MSA on April 2, 1986. Finally, on April 28, 1987, the court reversed itself again. The court held that as a matter of law the second March 14, 1980, letter was not part of the contract between MSA and Republic and therefore was parol evidence that could not be admitted into evidence. The court also held that even if the second March 14 letter was a part of the contract, parol evidence was inadmissible to explain the letter because the letter was unambiguous. The court vacated its April 2, 1986, order and reinstated its November 6, 1985, order, thereby granting Home Savings' motion for summary judgment. This appeal by MSA followed.

MSA asserts that the contract consists of several documents, including the second March 14 letter. MSA also contends that the March 14 letter obligates Home Savings, as Republic's successor in interest, to repurchase MSA's participation interest in the loans. Home Savings maintains that the contract does not include the March 14 letter. In the alternative, Home Savings argues that the March 14 letter cannot be construed to impose a repurchase obligation. The issue in dispute, therefore, is whether the parties intended the second March 14 letter to form part of the contract. Missouri law, which applies to this diversity action, holds that the question of

**1326**

contractual intent is a question of fact. *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 439 (8th Cir.1978); *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 674 (Mo.App. 1988).

The principles that governed the lower court in ruling on Home Savings' motion for summary judgment on this issue are well settled. Home Savings had the burden to establish beyond controversy that no genuine issue existed as to this factual question and that it was entitled to judgment as a matter of law. Home Savings could satisfy this burden by showing that the evidence, viewed in the light most favorable to MSA, could not support a reasonable factfinder's conclusion that the March 14 letter constituted part of the contract. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979).

 The district court erred in finding that Home Savings met its burden. Sufficient evidence exists from which a reasonable factfinder could conclude that the parties intended the second March 14 letter to form part of the contract. Under Missouri law, a contract can consist of multiple documents. *Missouri Farmers Ass'n, Inc. v. Barry*, 710 S.W.2d 923, 926 (Mo.App.1986). The parties' intent regarding the number of documents constituting the contract and the meaning of the contract is determined from the entire instrument or instruments, subsidiary agreements, and relevant external circumstances. *Id.* at 926. If several documents are made at the same time and relate to the same subject matter, they may be read together as one contract. *Merz v. First Nat'l Bank of Franklin County*, 682 S.W.2d 500, 502 (Mo.App.1984).

Home Savings does not dispute that the contract consists of numerous documents. Evidence exists to support a finding that the second March 14 letter is integrally related to the documents that are undisputably part of the contract. The second March 14 letter is dated the same date as both the first March 14 letter and the Gayne Loan Commitment. The documents, including the second March 14 letter, relate to the same subject matter. The second March 14 letter, like the first March 14 letter, refers explicitly to MSA's $4,000,-000.00 four-year participation interest in the loans that Republic made.

The integration clause in the Agreement, which states that all amendments must be in writing, is not conclusive proof that the parties did not regard the second March 14 letter as part of the contract. The second March 14 letter arguably satisfies the integration clause because it is a writing that was drafted and signed by Home Saving's predecessor in interest, Republic. That only Republic signed the second March 14 letter and that both parties signed all the other documents amending the contract is not fatal to MSA's claim. Other evidence supports a conclusion that the parties intended the letter to form part of the contract. An officer of MSA, Reinhold Borgmann, testified that the letter was a part of Republic's "total commitment" to MSA. A Home Savings' executive has even admitted that the seven documents alleged by MSA to constitute the contract, including the March 14 letter, "are copies of various of the documents executed in connection with a Loan Participation Agreement between Missouri Savings Association and Republic of Texas Savings Association * * *."

 The parol evidence rule does not bar the admission of the second March 14 letter into evidence. The purpose of the parol evidence rule is to preserve the sanctity of a written agreement once it is determined that the writing is fully integrated. An integrated writing is simply "a complete statement of the bargain made between the parties." *Centerre Bank of Kansas City v. Distributors*, 705 S.W.2d 42, 51 (Mo.App.1985). In this case, the parol evidence rule does not apply because whether the parties intended to integrate their entire agreement into particular documents is the threshold issue. Summary judgment was therefore inappropriate because the evidence is not clear.

Should a jury find that the letter was a part of the contract, parol evidence would

be admissible to interpret any ambiguities. *Press Machinery Corp. v. Smith RPM Corp.*, 727 F.2d 781, 784 (8th Cir.1984). An ambiguity exists when the terms of a contract "convey more than one meaning, so that reasonable men may fairly differ in interpreting those terms." *Klein v. Puritan Fashions, Inc.*, 439 S.W.2d 229, 232 (Mo.App.1969). We do not agree that, as a matter of law, the language "Republic will have the loan moved at the end of the four year period" is entirely clear. Parol evidence, including deposition testimony, may be necessary to explain the ambiguity.

The summary judgment in favor of Home Savings is reversed, and this cause is remanded for further proceedings.