IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
February 03, 2023 09:03 AM
ST-2021-CV-00051
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\***

| | |
|---|---|
| JOHN C. KIRKLAND, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> WALTER FEDDERSEN, JANE FEDDERSEN, ) <br> JEYAN K. STOUT, and STOUT REALTY, LLC ) <br> d/b/a COLDWELL BANK STOUT REALTY, ) <br><br> Defendants. ) <br> ) <br> ) | CASE NO.: ST-21-CV-051 <br><br> ACTION FOR BREACH OF CONTRACT, BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, TRESPASS, NEGLIGENT SUPERVISION, CONVERSION, UNJUST ENRICHMENT AND DECLARATORY JUDGMENT <br><br> Cite as 2023 VI Super 4U |

## MEMORANDUM OPINION

¶1 **BEFORE THE COURT** is Plaintiff's ("Plaintiff" or "Kirkland") "Motion for Reconsideration of November 18, 2022[1] Partial Summary Judgment Order" filed on December 16, 2022. Walter and Jane Feddersen ("Defendants" or the "Feddersens") filed their opposition on January 13, 2023. For the reasons stated herein, the Court will deny Plaintiff's motion.

## I. BRIEF FACTUAL BACKGROUND

¶2 On August 4, 2020, Plaintiff signed a one-year residential lease agreement with the Feddersens for the premises located at 6H Estate Nazareth, St. Thomas, United States Virgin Islands. The lease contained a clause granting Kirkland with a right of first refusal ("ROFR"), providing Kirkland with the option to purchase the property on the same terms of a third-party offer received

---

[1] This Order was amended on December 16, 2022, for the purpose of correcting typographical errors and providing clarity to reflect the Court's granting of summary judgment with respect to Count Three in favor of the Feddersen Defendants and to reverse the Court's oral ruling made on November 28, 2022, by removing the Rule 54 language certifying the Order as a final judgment. Accordingly, the November 18, 2022, judgment has not been certified as a final judgment in accordance with V.I.R. Civ. P. 54.

by the Feddersens. On May 22, 2020, the Feddersens listed the property with Defendants Jeyan K. Stout and Coldwell Bank Stout Realty ("Defendant Stout" or "Stout") with a listing price of $2.85 million. On January 25, 2021, the Feddersens received an offer for the property for a total of $2.81 million. On February 10, 2021, the Feddersens' attorney notified plaintiff of the third-party offer, triggering Kirkland's 48 hours to exercise his right of first refusal; however, the contract for sale was not provided to Kirkland on this date. Thus, at his request, on February 17, 2021, the Feddersens' attorney extended a renewed right of first refusal to Kirkland and provided the contract of sale between the Feddersens and the third-party in its entirety. On February 18, 2021, Plaintiff advised the Feddersens he is willing to purchase the property for $2.5 million. Presently, Kirkland maintains he properly exercised his right of first refusal, while the Feddersens contend he did not by failing to agree to the $2.81 million price.

¶3     On February 23, 2021, Plaintiff filed a First Amended Complaint, which alleged, among other things, the Feddersens breached the option contract created by the ROFR clause (Count Three) and the implied duty of good faith and fair dealing with respect to the ROFR agreement (Count Four). On February 10, 2022, Kirkland filed a motion for partial summary judgment for those counts; and on March 28, 2022, the Feddersens filed a cross-motion for partial summary judgment on the same counts. The parties filed the respective oppositions and replies for each motion.

¶4     The Court heard oral arguments on the issues on August 9, 2022, and on November 18, 2022. On November 18, 2022, the Court issued an order granting summary judgment on Count Three in favor of the Feddersens and denying summary judgment on Count Four. The Court held a status conference on November 28, 2022, and orally ruled it would certify for appeal the November 18, 2022 decision as a final judgment pursuant to V.I.R. Civ. P. 54. On December 16, 2022, the Court

reversed its November 28, 2022 bench ruling and amended the November 18, 2022 Order to reflect that determination. On December 16, 2022, Plaintiff filed this motion.

## II. STANDARD OF REVIEW

¶5    Plaintiff is moving for reconsideration under V.I.R. Civ. P. 59(e), which "governs motions to alter or amend a judgment and provides that [it] must be filed no later than 28 days after the entry of the judgment." *Cipriani v. Cipriani,* 74 V.I. 3, f.n. 4, (V.I. Super. Ct. 2021), quoting Rule 59(e). Under Rule 59(e), there are three grounds a motion may rely on: "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *Chavayez v. Buhler,* 2009 WL 1810914 *8 (V.I. 2009).

¶6    More precisely, however, Defendants argue Plaintiff should be moving for reconsideration under Rule 6-4 as the November 18, 2022 Order is not a final judgment. V.I.R. Civ. P. 6-4 provides that "a party may file for a motion asking the court to reconsider its order or decision within 14 days after the entry of the ruling, unless the time is extended by the court and [e]xtensions will be only be granted for good cause shown." *Cipriani,* at *8. The Court agrees with Defendants that Plaintiff should have moved for reconsideration under Rule 6-4 instead of 59(e). Defendants, however, further contend because of the 14-day limitation under Rule 6-4, Plaintiff's motion is untimely. Considering the Court did not enter the amended November 18, 2022 Order until December 16, 2022, which determined the Order would not be certified as a final judgment, and this motion was filed on the same day, the Court will decide the motion on the merits in accordance with the standards under Rule 6-4.

¶7    A motion for reconsideration under Rule 6-4 must be based on "(1) an intervening change in controlling law; (2) availability of new evidence; (3) the need to correct clear error of law; or (4)

failure of the court to address an issue specifically raised prior to the court's ruling." V.I.R. Civ. P. 6-4(b). A motion for reconsideration is not a "second bite of the apple," nor a "vehicle for registering disagreement with the [C]ourt's initial decision, for rearguing matters already addressed by the [C]ourt, or for raising arguments that could have been raised before but were not." *Merchants Commercial Bank v. Oceanside Village, Inc.*, 2019 WL 7972136 *2 (V.I. Super. Ct. 2019) (quoting *Smith v. Law Offices of Karin A. Bentz, P.C.*, 2019 WL 671389 *8 n.50 (V.I. Super. Ct. 2018)). It is "intended to focus the parties on the original pleadings as the 'main event,' and to prevent parties from filing a second motion with the hindsight of the court's analysis covering issues that should have been raised in the first set of motions." *Magras v. National Industrial Services, LLC*, 75 V.I. 11, 14 (V.I. Super. Ct. 2021) (quoting *In re Infant Sherman*, 49 V.I. 452, 457 (V.I. 2008)). "In determining whether to grant such a motion, the Court operates with 'the common understanding that reconsideration is an 'extraordinary' remedy not to be sought reflexively or used as a substitute for appeal.'" *Id.* Here, Plaintiff presents four arguments wherein he asserts the Court committed clear error.

### III.   LEGAL ANALYSIS

i.   **The Feddersens' admission that the price of the furnishings was separate from the price of the property clarified the terms of sale only. This admission does not alter Kirkland's obligations under the ROFR clause pursuant to his lease. Accordingly, any error by the Court in disregarding this admission was harmless.**

¶8      First, Plaintiff argues the Court committed clear error by substituting its own judgment in place of an admission by the Feddersens that the price of the furnishings was separate from the price of the property. Plaintiff points to Defendants' March 13, 2021 emergency motion which states, in pertinent part:

> "The Contract includes an agreement on a price for the personal property and equipment. It is common practice in the real estate industry in the Virgin Islands to allocate the full sale price of a furnished property between the realty and personalty, as there are no stamp taxes assessed on a sale of personal property."

In his partial motion for summary judgment, Plaintiff argued this was an admission by the Feddersens that the furnishings are distinct from the purchase price and further that it was done manipulatively to evade a portion of the stamp tax. In its Order, the Court held the argument that the Feddersens would distinguish between the purchase price and the furnishings to avoid taxes was unpersuasive, given the nominal value between the percentage of the stamp tax on the difference between the sales price with and without furnishings. In his motion for reconsideration, Plaintiff argues that this reasoning by the Court misses the bigger issue that the Feddersens admitted the two are distinct, that is that the furnishings are separate from the price of the property; therefore, the Court committed clear error.

¶9      In response, Defendants argue the statement provides the terms of the sale, as set forth in the contract between the Feddersens and the third-party purchaser. The Court agrees with Defendants. The statement from the March 13, 2021 emergency motion more fully states:

> "Mr. Kirkland leased a fully furnished property. The Villa was already on the market as a fully furnished property. The Contract includes an agreement on a price for the personal property and equipment. It is common practice in the real estate industry in the Virgin Islands to allocate the full sale price of a furnished property between the realty and personalty, as there are no stamp taxes assessed on a sale of personal property."

It is apparent that this statement is clarifying the terms of the contract, which should be read in whole, and not only in relation to the line-item purchase price, as Plaintiff suggests. "[T]he cardinal principle of contract interpretation is that the intention of the parties must prevail unless it is inconsistent with some established rule of law." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (V.I. 2017) (quoting 11

RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:2 (4th ed., rev. vol. 2012)). "Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." *Id.* Ultimately, the division of sums does not alter what Kirkland was required to accept under the terms of his ROFR clause.

¶10    Generally, courts have found that the premises as described in the lease control what the right holder must purchase when exercising a right of first refusal. *See, e.g., B&R Oil Co., Inc. v. Stoler,* 77 N.E.3d 823, 829-30 (Ind. Ct. App. 2017); *Pantry Pride Enterprises, Inc. v. Stop & Shop Companies, Inc.*, 806 F.2d 1227, 1228 (4th Cir. 1986). While unbinding on this Court, the Court finds these cases persuasive and applicable to the matter *sub judice*.

¶11    In *B&R Oil Co., Inc. v. Stoler*, the Stolers leased several pieces of real property from B&R Oil to operate gas stations. *Id.* at 825. The Stolers signed individual leases for each parcel, all of which contained an ROFR clause that granted them the "the right of first refusal *to purchase the leased premises* … in the event that a bona fide offer *to purchase the leased premises* is presented to Lessor…" *Id.* at 826. During the lease term, B&R Oil signed a letter of intent to "sell substantially all of its assets to Empire for approximately $80,000,000." *Id.* The offer included the premises leased by the Stolers and at least sixteen other parcels of real property, amongst other things. *Id.* B&R Oil notified the Stolers of the offer and the Stolers responded with their intent to exercise their rights for each lease. *Id.* B&R Oil contested the Stoler's exercise of their right; arguing that the Stolers had to match the entire offer and tender $80,000,000 for the real estate and assets. *Id.* The Stolers argued under the lease agreements they were only required to purchase the "leased premises." *Id.* The Indiana Court of Appeals held for the Stolers and reasoned that under the clause, the "leased premises," could only mean the real property as described in the Stolers lease and no other property.

*Id.* at 830. The court further reasoned that B&R Oil failed to comply with the ROFR by presenting a non-conforming third-party offer by "bundl[ing] the lease properties with the other property interested unrelated to the leased premises." *Id.* at 831. Thus, the lease as described governed the property encompassed in the ROFR clause.

¶12    This premise is also supported by *Pantry Pride Enterprises, Inc. v. Stop & Shop Companies, Inc.* In this case, Stop & Shop leased a portion of its shopping center to the supermarket chain Pantry Pride. The lease contained an ROFR clause which required Pantry Pride to notify Stop & Shop of any assignment of the lease, and in turn Stop & Shop had thirty days to accept an assignment of interest upon the same terms of the third-party offer. *Id.* at 1228. For the store in question, Pantry Pride received an offer of $571,000, with $428,250 allocated to the purchase of the equipment and $142,750 allocated to the assignment of the lease. *Id.* Stop & Shop argued they were only required to assume the lease for the allocated price of $142,750 and not for the full $571,000, which included the equipment. *Id.* In determining the scope of the Stop & Shop's ROFR, the Fourth Circuit held that Stop & Shop was not required to purchase the equipment. *Id.* at 1229. The court reasoned that Pantry Pride's lease provided "a building with some adjacent land; [Pantry Pride] had to buy, install, and ultimately remove its own equipment." *Id.* The court further reasoned:

> "If the right of first refusal were to require Stop & Shop to buy both the lease and the equipment, it would be the only lease provision treating the lease and the equipment as a single unit. When the entire lease carefully separates the two interests, it is incongruous to argue that Stop & Shop's option extends to the lease and equipment."
>
> ...
>
> "[A] seller cannot force an option holder to buy more property than that covered by the first refusal provision. ... The reason for this line of authority is clear: if Pantry Pride could include the lease as part of a package and force Stop & Shop to accept the entire package or forfeit its right, then Pantry Pride could effectively nullify the right of first refusal by combining the lease with items that Stop & Shop may not

want or cannot afford. We hold that Pantry Pride cannot force Stop & Shop into any such predicament. *Pantry Pride, moreover, could have 'foreseen the commercial need to combine' the lease and equipment in a single sale and could have insisted that the equipment be included 'in the right of first refusal.'*"

*Id.* (*citing Radio WEBS, Inc. v. Tele-Media Corp.*, 249 Ga. 598, 292 S.E.2d 712, 715 (1982).

¶13 In this matter, under the ROFR, Kirkland was required to purchase the real property and personalty. Kirkland's ROFR clause allowed him to purchase "6H Estate Nazareth," and while he contends "6H Estate Nazareth" can only be understood as the real property, that is not what is dictated in the lease agreement. The lease defines the property as:

> "6H Estate Nazareth, St. Thomas USVI 00802
> Being a 4 bedroom, 4.5 bath furnished Villa
> With a 1 bedroom, 1 bath furnished Guest Apartment
> Property is named Cabrita Cliff Haus"

At the signing of the lease, Kirkland was aware of the defined premises as a "4 bedroom, 4.5 *furnished* Villa" and included a "1 bedroom, 1 bath *furnished* Guest House." The premises as described in the lease is what governs what property is transferable by a right of first refusal and Kirkland's lease is clear and unambiguous as to what is included in the premises. *See B&R Oil Co., Inc. v. Stoler*, at 829. Further, the lease does not divide the real property from the personalty; but, instead, treats them as a single interest. *See Pantry Pride Enterprises, Inc.*, at 1230.[2]

¶14 Although Plaintiff is correct that the language from the emergency motion shows that the personal property and the real property were kept distinct in the sales contract, this distinction had no bearing on the purchase price of the property nor changed the required terms under the ROFR.

---

[2] This is distinguishable from the issue presented in Pantry Pride's lease, where the Fourth Circuit noted that "the lease itself divided the leasehold and equipment interest, putting Pantry Pride on notice that the lease and equipment were separate interests." Here, Kirkland was put on notice from the signing of the lease that the real property and furniture are treated as a singular property interest.

Although the sales contract created a distinction between the furniture and the real property, and itemized the value of each, the lease agreement did not. Under the right of first refusal clause, Kirkland was required to purchase 6H Nazareth as defined in the lease. Accordingly, the Court finds that even if there is an admission that the Feddersens separated the sums on the contract, the error was harmless to the Court's dismissal of Count Three as the purchase price would not be affected by this division of terms because under the ROFR, Kirkland had to purchase 6H Estate Nazareth as defined in the lease, which treats the property as a singular interest.

### ii. The Court did not err in accepting both parties' statements of undisputed facts and their responses in making its determination.

¶15    Plaintiff next argues the Court erred in accepting the Feddersens' statement of undisputed facts and their responses to his statement. He argues that because the Court did not address the civil procedure violations in the Feddersens' motions, the Court should consider the statements made by Plaintiff as true. Specifically, again, Plaintiff points to what he considers an admission by the Feddersens that the price of the property and the furnishings are separate. He states that he put this admission in his statement of undisputed facts, and that the Feddersens failed to rebut this statement in their counterstatement; therefore, the Court must accept it as true. To support this argument, Plaintiff cites two cases which hold that in a motion for summary judgment, the movant must provide specific facts showing there is no genuine issue at dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). He contends that the Feddersens' failure to rebut each factual assertion Plaintiff makes in this statement and counterstatement of undisputed facts deems these assertions as undisputed and therefore bars this Court from granting summary judgment in favor of the Feddersens.

9

¶16     Again, the Court disagrees. In its Order, the Court acknowledged that the Feddersens violated V.I.R. Civ. P. 56(c)(2)(B) and 56(c)(2)(C) and chose to exercise its inherent discretion to waive these violations.[3] Further, pursuant to V.I.R. Civ. P. 56(e), when a party fails to properly address another party's assertion of fact, the court may:

> "(1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order."

Plaintiff's argument ignores the authority of the court to remedy the violation in accordance with 56(e) and further discounts in its entirety the evidence provided by the Defendants in their opposition and cross-motion for summary judgment. Under 56(e)(1), the Court may grant an opportunity for the Feddersens to address any defects in their statements; this opportunity was already seized by the Defendants in their cross-motion for partial summary judgment and their counterstatement of undisputed facts when they addressed the identical issues put forth in Kirkland's motion for summary judgment.

¶17     When deciding on a motion for summary judgment, the court's role "is not to determine the truth, but rather to determine whether a factual dispute exists that warrants trial on the merits." *Davis v. Milligan*, 2020 WL 13261002 *2 (V.I. Super. Ct. 2020) (quoting *Todman v. Hicks*, 70 V.I. 430, 437 (V.I. 2019)). Here, the Court had the authority and the responsibility to consider all of the evidence presented by both parties in interpreting the ROFR clause. *See Kennedy Funding Inc. v. GB Properties, Ltd.*, 73 V.I. 426, 437 (V.I. 2020). The Court was provided with the lease agreement, the

---

[3] *See In re Rohn*, 67 V.I. 764, 772 (V.I. 2017) holding: "It is well established that the Superior Court has broad discretion in managing its own docket."

third-party contract of sale, emails between both parties' counsel discussing, amongst other things, the initial notice to Kirkland about the third-party offer, and then the renewed right of first refusal and its terms. While Kirkland maintains the Feddersens may have not responded to Plaintiff's statements in a sufficient manner, the Court's decision was not determined solely on the statements made by both parties, but on the totality of the evidence provided. Accordingly, pursuant to the V.I.R. Civ. P. 56(e)(1), the Court did not err in waiving the Feddersens' civil procedure violations.

### iii. The Court interpreted the contract of sale in its entirety; thus, Plaintiff's argument that the Court impermissibly considered materials outside of the "four-corners of the ROFR" is unpersuasive.

¶18 Kirkland next argues the Court erred by impermissibly considering materials outside the "four-corners of the ROFR" in concluding that the furnishings and stamp taxes were part of the purchase price. To support his argument, Plaintiff relies on *In re MCL Enterprises, Inc.*, 749 F.3d 634 (7th Cir. 2014) and *A&R Partners, LLC v. Chesapeake Exploration, LLC*, 528 S.W.3d 869 (Tex. 2017), which both, allegedly, stand for the premise that in interpreting an ROFR clause, the court must "rely solely on the language of the contract and cannot consider extrinsic evidence, such as the parties' past practices or the circumstances surrounding the contract's execution." After extensive research, the Court could not find the legal precedent cited by Plaintiff on either of the above-referenced cases. Nevertheless, general principles of contract law in the Virgin Islands allow the court to interpret the meaning of a contract as a whole to ascertain the intent of the parties. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017).

¶19 Plaintiff argues the Court erred in relying on extrinsic materials, such as the property listing, to determine its interpretation of the ROFR. Kirkland is incorrect. While the Court considered the property listing, which provided that the property was furnished and the stamp taxes were to be paid

by the buyer, the Court pointed to the listing and to the case *Vaso, L.L.C. v. Brave New World Investments, L.L.C.*, 201 So.3D 515 (La.App. 4 Cir. 2020) to show that Kirkland cannot claim he did not know all of the terms of sale because they were provided to him in the third-party offer and the lease agreement. The Court's interpretation of the ROFR clause came from the plain language of both the residential lease agreement and the contract of sale, which are to be considered together to determine the parties' intent.[4] Additionally, according to Plaintiff, Defendant Stout was also the buyer's agent; thus, the Court finds it difficult to believe Kirkland was unaware as to what the terms, conditions, and property features were.

### iv. Plaintiff misstates the Court's findings when he argues the Court erred in its determination of when the right of first refusal was granted to Kirkland.

¶20 Finally, Plaintiff argues that "the terms of sale under a right of first refusal are created at the time when the third-party offer is *made*, not when the right is *created* under the lease agreement," and that this is contrary to the Court's order. Plaintiff's argument stems from the Court's sentence in its Order which states: "[t]hese terms (referring to the furnishings and stamp taxes) were specified when the right was granted and which the other parties have agreed upon." His argument is that the Court erred in stating that this is when the right of first refusal was granted to Plaintiff, rather than when Plaintiff signed the lease containing the clause. While Plaintiff is correct that his right was granted when he signed his lease containing the ROFR clause, and not with the third-party offer, his argument is unavailing and at most constitutes a harmless error in syntax by the Court. The Court's reasoning in the following statement, and throughout the November 18, 2022 Order, provides that because

---

[4] *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017) (quoting *Mo. Sav. Ass'n v. Home Sav. of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) stating: "The parties' intent regarding the number of documents constituting the contract and the meaning of the contract is determined from the entire instrument or instruments … and relevant external circumstances.").

Kirkland was aware of all the terms of the third-party's offer on February 16, 2021, he was bound to accept the offer as it was presented.

¶21 In fact, the arguments by Plaintiff in his motion for reconsideration support the Court's reasoning. Plaintiff first cited to *Hamer v. Sidway*, 124 N.Y. 538 (1891), for the proposition that "the terms of sale are not fixed by the agreement of the parties, but by the offer of the third person, and, if the party having the right of first refusal accepts the offer, he must accept it upon the terms made by the third person."[5] This argument by Plaintiff reiterates the Court's reasoning in its Order: Kirkland must have accepted the offer based upon the terms of the third person to properly exercise his right of first refusal.

## IV. CONCLUSION

¶22 While Plaintiff continues to assert that he properly exercised his right of first refusal, all of the legal precedent and evidence show otherwise. On August 4, 2020, Plaintiff leased the premises "6H Estate Nazareth," which was defined as a "4 bedroom, 4.5 bathroom *furnished* Villa" and included a "1 bedroom, 1 bathroom *furnish[ed]* Guest Apartment." While the ROFR only refers to "6H Estate Nazareth," the definition in the lease agreement is clear and unambiguous that the real property and furnishings are combined as a singular property interest. Further, under Virgin Islands law regarding contract interpretation, the Court was within its discretion to interpret Kirkland's obligations under the ROFR clause by reviewing both the lease agreement and the third-party offer. Finally, and supported by Plaintiff's own contentions, Kirkland had to match the third-party offer as it was presented. Thus, the Court finds there was no error in determining that Kirkland did not

---

[5] The Court could not verify this language came from *Hamer v. Sidway*, which does not hold nor state the language which Plaintiff cites to; instead, the case discusses the law regarding forbearance as a means for consideration in contract law. Likewise, the Court could not verify the language cited by Plaintiff in *Thompson v. Allen*, 283 P.2d 807 (Kan. 1955).

properly exercise his right of first refusal; hence, the Court's granting summary judgment on Count

Three in favor of the Feddersens was proper. Accordingly, Plaintiff's motion for reconsideration

should be denied. An appropriate Order follows.

Dated: February 3, 2023

**Renée Gumbs Carty**
Senior Sitting Judge Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 2 / 6 / 2023

14