**UNITED MISSOURI BANK, N.A., Respondent,**

v.

**CITY OF KANSAS CITY, Appellant.**

**No. WD 62543.**

Missouri Court of Appeals, Western District.

Dec. 16, 2003.

---

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

Charlotte Ferns, Kathy K. Adams, Kansas City, for appellant.

Richard Lenza, Mark Alan Olthoff, Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

Kansas City's municipal government lost its battle with United Missouri Bank over earnings taxes when the circuit court granted summary judgment for UMB. The city appeals, charging the circuit court with erroneously rejecting its definition of "necessary expenses of operation," which are exempt from the city's earnings tax. We conclude that the circuit court erred in issuing summary judgment because UMB's right to it depends on the presence or absence of certain material facts, and UMB has not established an absence of dispute about those facts. We reverse the judgment and remand the cause for further proceedings.

Our review of the circuit court's summary judgment is essentially *de novo.* We determine from the entire record whether or not the material facts on which summary judgment depends are disputed. A party is entitled to summary judgment if, in light of the undisputed facts, the law would require ruling in his favor. *ITT*

*Commercial Finance Corporation v. Mid–America Marine Supply Corporation,* 854 S.W.2d 371, 376–382 (Mo. banc 1993).

On March 16, 2000, the city notified UMB that it owed $532,918.26 in unpaid city earnings taxes, penalties, and interest for 1995, 1996, and 1997. UMB attempted to pay the taxes under protest as permitted by § 139.031, RSMo 2000.[1] When the city declined to refund the taxes, UMB sued to recover them.

The city argues that the circuit court erred in granting summary judgment for UMB because the law required it to (1) disallow UMB's deducting its expenses incurred in generating tax exempt income, (2) disallow UMB's deducting more than one-half of its meal and entertainment expenses, and (3) impose penalties and interest.

Kansas City's municipal government is governed by a charter and has the power to impose and to collect an earnings tax. Mo. Const. art. VI, § 19 (1945); § 92.210, RSMo 2000; K.C. Charter, § 394.1. For businesses such as UMB, state law and the charter restrict the city to imposing the tax on the businesses' net profits. Sections 92.210 and 92.240, RSMo 2000; K.C. Charter, § 394.1. The General Assembly has directed that net profits be determined by "deducting the necessary expenses of operation from the gross profits or earnings." Section 92.240.

Because the General Assembly has not defined "necessary expenses of operation," the city supplied its own. It has declared that businesses may deduct ordinary and necessary expenses "as determined for the purpose of federal taxable income with adjustments as detailed in the regulations adopted pursuant to [Article VI, Earnings and Profits Tax]." K.C. Code, ch. 68, art. VI, § 68–381.

The city argues that its defining "necessary expenses of operation" was proper because of § 92.260, which says, "The municipal assembly of the city may provide for deductions, exemptions and credits." Reading this statute in *para materia* with § 92.240, the city argues, "gives the [c]ity authority to determine which deductions, exemptions and credits are allowable in establishing the necessary expenses for operation of a business."

■ Although these statutes authorize the city to provide for deductions in addition to "necessary expenses of operation," the city may define such terms as "necessary expenses" so long as Missouri's constitution, the General Assembly's statutes, or the city's charter do not prohibit it. Indeed, the constitution says:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute....

Mo. Const. art. VI, § 19(a) (1945). So long as the General Assembly *could* grant a city the power, we will deem the city to lack the power only if it is otherwise limited or denied. *See Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 210 (Mo. banc 1986); *State ex inf. Hannah ex rel. Christ v. City of St. Charles,* 676 S.W.2d 508, 512 (Mo. banc 1984); *St. Louis Children's Hospital v. Conway,* 582 S.W.2d 687, 690 (Mo. banc 1979). Neither the constitution nor the charter limits or denies the city's authority to define necessary expenses.

Nor do we find any statute that limits or denies the city the power to define the

---

1. All citations to statutes refer to the 2000 Revised Statutes.

term. We find none that expressly imposes a limitation, and UMB does not point out any. Section 92.240 is the only provision in which the General Assembly has addressed the matter in regard to an earnings tax, and it says, "The net profits or earnings of associations, businesses or other activities, and corporations shall be ascertained and determined by deducting the necessary expenses of operation from the gross profits or earnings." We find nothing in this indicating that the General Assembly wanted to prohibit the city from defining "necessary expenses of operation." Indeed, the statutes in Chapter 92 suggest the contrary. The General Assembly, aside from statutorily exempting certain entities and items from the city's taxation, provided no specifics in guiding cities in their imposing an earnings tax.

■ Notwithstanding the lack of prohibition on the city's authority, its power is not *carte blanche.* The Supreme Court's analysis in *Hopkins v. City of Kansas City, Missouri,* 894 S.W.2d 156, 158–59 (Mo. banc 1995), suggests that, even when a city's action has not been prohibited by the constitution, the General Assembly, or the city's charter, the city must not act in a way that thwarts the General Assembly's intent.

The General Assembly obviously intended something in ordering exemption of "necessary expenses of operation." The city's power to define the term, therefore, does not include authority to define the term so narrowly as to negate the General Assembly's exemption.

■ The city has disallowed the deduction of "[e]xpenses incurred in connection with the generation of ... exempt income[.]" Regulation E–141.B.3.b. In enforcing this regulation, the city imposes à formula, without regard for necessity, in which it disallows a portion of expenses incurred in connection with the generation of exempt income. In doing this, the city has implicitly determined that a percentage of a business' expenses in connection with the generation of exempt income are not necessary expenses of operation, but this does not consider the expense's nature. Hence, the city has imposed a policy that, in contravention of the General Assembly's mandate, does not consider what expenses are "necessary" to a business' operation.

Although we conclude that the city cannot enforce its regulation against UMB in the manner it has, this does not necessarily establish that UMB is entitled to a refund of the taxes it paid under protest. Material issues of fact remain as to whether or not the disallowed deductions were "necessary expenses of operation."

■ The undisputed material facts establish that the city disallowed UMB from deducting $58,783,856 in interest expense and $1,905,346 in meal and entertainment expenses for the three years. The circuit court could not determine from this record whether or not the disallowed expenses were necessary in the plain and ordinary meaning of the word. It could not determine as a matter of law whether or not the expenses were necessary without further information regarding how UMB incurred them and for what purpose. UMB contends, for example, that it incurred most of its interest expense in handling customer deposits. If so, perhaps this was a necessary expense. We conclude, therefore, that summary judgment was premature. We reverse the judgment and remand the case.

THOMAS H. NEWTON, Presiding Judge, and, PATRICIA A. BRECKENRIDGE, Judge, concur.