**UMB BANK, NA., Respondent,**

v.

**CITY OF KANSAS CITY, Missouri, Appellant.**

No. WD 67485.

Missouri Court of Appeals, Western District.

Nov. 20, 2007.

Kathy K. Adams, Stephen D. Walsh, Co–Counsel, Kansas City, MO, for appellant.

Richard E. Lenza, Mark A. Olthoff, Co–Counsel, Kansas City, MO, for respondent.

Before PATRICIA BRECKENRIDGE [1] , Presiding Judge, JOSEPH M. ELLIS, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

The City of Kansas City ("the City") appeals from a judgment entered in the Circuit Court of Jackson County in favor of UMB Bank, N.A. ("UMB") in UMB's suit to recover a refund of earnings taxes paid to the City. Specifically, the City challenges the trial court's determination that UMB was entitled to deduct from its gross earnings certain interest expenses related to nontaxable investments in government securities.

UMB is a for-profit, banking corporation headquartered in Kansas City, Missouri. As such, UMB was subject to the Earnings and Profits Tax Ordinance of Kansas City, Missouri. On its city earnings tax returns

---

1. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

in 1995, 1996, and 1997, UMB claimed deductions for interest expenses paid to depositors. On March 16, 2000, the Commissioner of Revenue for the City issued an earnings tax assessment against UMB for those years, having found that a percentage of the interest expense deductions claimed by UMB were used to make tax-exempt investments and should, therefore, not be allowed.[2] Specifically, the City disallowed claimed interest expenses of $22,521,516.00 for 1995, $19,650,958.00 for 1996, and $16,611,382.00 for 1997. On January 22, 2001, UMB paid, under protest, an additional $561,971.31 in City earnings tax, penalties, and interest, and provided the City with a written statement setting forth the grounds for its protest.[3]

After the City denied UMB's protest, UMB filed a petition in the circuit court against the City pursuant to § 139.031(2),[4] seeking reimbursement of the taxes paid under protest. After the circuit court granted summary judgment in favor of UMB, the City appealed. On appeal, this Court reversed the circuit court's judgment, holding that, while the City did not have the authority to preclude a taxpayer from deducting necessary expenses of operations from its gross profits or earnings in calculating "net profits or earnings" as allowed by § 92.240,[5] a genuine issue of material fact remained regarding whether or not the disallowed interest expense deductions were "necessary expenses of operation." *United Missouri Bank, N.A. v.* *City of Kansas City,* 121 S.W.3d 320, 323 (Mo.App. W.D.2003).

On August 28, 2006, the case was heard by the trial court on remand. That same day, the trial court issued its judgment finding that UMB had met its burden of proving that all of the claimed interest expenses were "necessary expenses of operation." The court concluded that UMB was entitled to a full refund of the taxes erroneously assessed by the City and paid under protest by UMB, along with pre-judgment interest. The City brings two points on appeal from that judgment.

As in any court-tried case, our review is governed by the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Golden Delta Enters. v. City of Arnold,* 151 S.W.3d 119, 121 (Mo.App. E.D.2004). Accordingly, "[t]he judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law." *Id.* In making those assessments, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Hart v. Hart,* 210 S.W.3d 480, 484 (Mo.App. W.D.2007).

■ In its first point, the City contends that the trial court erred in excluding from evidence testimony from the City's audit

2. Regulation E–141B.3.b(1) of the Earnings and Profits Tax Regulations adopted by the City states: "Expenses incurred in connection with the generation of not earned or unearned income, exempt income or excluded income, shall not be allowed for purposes of computing net profits earned."

3. A portion of the taxes paid under protest related to disallowed expenses for meals and entertainment. The City subsequently withdrew that portion of its assessment and agreed to provide UMB with an appropriate refund related thereto.

4. All statutory references are to RSMo 2000 unless otherwise noted.

5. Section 92.240 states that "[t]he net profits or earnings of associations, businesses or other activities, and corporations shall be ascertained and determined by deducting the necessary expenses of operation from the gross profits or earnings."

manager, John Smith, opining that UMB's interest expenses were not necessary expenses of operation. The City claims Smith's testimony was relevant and material to the central issue in the case. Smith offered the following testimony at trial:

Q: And what are operating expenses?

A: In the terms when you calculate gross profits, operating expenses are everything that are linked to the gross revenue but are expenses like salary, depreciation, utilities, and items like that.

Q: So what—for a bank, what would be the expenses that would be excluded from the operating expenses?

A: Interest expense.

Q: Have you seen a UMB financial summary?

A: Yes.

Q: Do they separate out the operating expenses from the total expenses?

A: Yes. But they call it noninterest expense and includes items like salaries, depreciation, items like that.

Q: Should necessary expenses of operation include interest expense?

A: No, it should not because—

At that point, UMB objected to Smith's testimony on relevance and foundational grounds, and the Court sustained UMB's objection. The City then presented the following offer of proof:

Q: Should necessary expenses of operation include interest expense?

A: No.

\* \* \*

Q: And why?

A: Because whenever gross profits and the—gross profits and operating expenses are used in connection with each other, operating expenses does not include the expenses that could be linked to the gross receipts.

Q: So for a bank, are there any expenses that you would exclude from necessary expenses of operation?

A: Yes. Interest expense is cost of capital and it could be associated with a gross receipts and should be used in the determination of gross profits.

Q: Okay. And what items would you be looking at for necessary expenses of operation?

A: It's any items that can't be linked to gross receipts. So it would be items like salaries, the depreciation of buildings, rent utilities, and basically fixed costs.

Appellant argues that the foregoing testimony should have been admitted by the trial court because it was relevant and material to the issues before the court.

■■■ "[T]he admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court, and this Court will not interfere with that discretion unless it plainly appears that it has been abused." *Eltiste v. Ford Motor Co.,* 167 S.W.3d 742, 750–51 (Mo.App. E.D. 2005) (internal quotation omitted). "Where evidence has been excluded, the issue is not whether the evidence was admissible, but rather whether the trial court abused its discretion in excluding it." *Grab ex rel. Grab v. Dillon,* 103 S.W.3d 228, 238 (Mo.App. E.D.2003). "A trial court abuses its discretion, as to the admissibility of evidence, when its ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 164 (Mo.App. W.D.2006). Furthermore, "[e]ven if the exclusion of testimony is erroneous, we will not reverse the judgment absent a finding that the error mate-

rially affected the merits of the action." *Eagan v. Duello,* 173 S.W.3d 341, 349 (Mo. App. W.D.2005) (internal quotation omitted).

■■■ "To be admissible, evidence must be logically and legally relevant." *Whelan v. Missouri Pub. Serv., Energy One,* 163 S.W.3d 459, 462 (Mo.App. W.D.2005). "Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates other evidence." *Id.* " 'Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence).' " *Id.* (quoting *Guess v. Escobar,* 26 S.W.3d 235, 242 (Mo.App. W.D.2000)). "Logically, relevant evidence should not be excluded unless it pertains to collateral matters, which would result in confusion of the issues or would cause prejudice wholly disproportionate to the value and usefulness of the offered evidence." *Payne v. Cornhusker Motor Lines, Inc.,* 177 S.W.3d 820, 836 (Mo.App. E.D.2005).

Smith's testimony could not have been much more logically or legally relevant to the issue before the trial court, as prescribed by this Court's previous opinion: "whether or not the disallowed [interest expense] deductions were 'necessary expenses of operation.' " *United Missouri Bank, N.A.,* 121 S.W.3d at 323. It was essential for the trial court to make that determination because § 92.240 permits the deduction of "necessary expenses of operation" from "gross profits." In order to ascertain whether certain expense items can be deducted, evidence must establish what constitutes "gross profits." Smith's proffered testimony went directly to the issue of the distinction between "gross receipts" and "gross profit." The term "gross receipts" is defined as "[t]he total amount of money or the value of other consideration received from selling property or from performing services." *Black's Law Dictionary* 703 (6th ed.1990). "Gross profit" is defined as "[t]he difference between sales and the cost of goods sold before allowance for operating expenses and income taxes." *Black's Law Dictionary* 703 (6th ed.1990).[6]

The City was seeking Smith's opinion as an accountant regarding whether the bank's interest expenses constituted operating expenses for purposes of deducting them from "gross profits" pursuant to § 92.240, and an explanation for why he held that opinion. Smith would have testified, as reflected in his offer of proof, that the interest expenses like those at issue are considered in the accounting community to be a cost of capital and, therefore, are subtracted from the *"gross receipts"* in calculating the *"gross profit."* According to Smith, because such interest expenses are accounted for in this manner, they are

---

**6.** In its brief, the City contends that for accounting purposes, the term "operating expense" is synonymous with "expense of operation," and puts forth the following definition for the latter phrase, quoting *Kohler's Dictionary for Accountants* 360 (6th ed.1983):

> Expense incurred in the ordinary activities of an entity; generally includes selling expenses, administrative expenses, and general expenses, but frequently *excludes* cost of sales, *interest,* and income tax expenses.

(emphasis added by City). Asserting that UMB's interest expenses at issue in this case would be considered a "cost of funds," the City then defines that phrase, quoting *Barron's Dictionary of Business Terms* 148 (3d ed.2000):

> Interest cost paid by a financial institution for the use of money. In the banking and savings and loan industry, the cost of funds is the amount of interest the bank must pay on money market accounts, passbook savings accounts, CDs and other liabilities.

not considered to be expenses of operation to be deducted from the *"gross profit"* as authorized by § 92.240.

 As noted by the Missouri Supreme Court in *Walters v. City of St. Louis,* 364 Mo. 56, 259 S.W.2d 377, 387 (banc 1953), "[t]he problem of what constitutes 'necessary expenses of operation' is, and perhaps always will be, vexing. It is a matter of common knowledge that the concept of the meaning of this phrase changes from time to time as accepted methods of accounting change." Thus, the phrase "necessary expenses of operation" is an accounting term of art that is subject to changes in field of accounting, and its meaning and usage is a proper subject for expert testimony. UMB presented testimony from an accountant employed by the bank expressing his opinion that the interest expenses were "necessary expenses of operation" and explaining his reasoning for that opinion. To preclude the City's accountant from offering testimony on the same subject matter was arbitrary and unreasonable. Had this evidence been admitted and found credible by the trial court, there is a reasonable likelihood the result of the trial would have been different.

UMB has failed to develop, at trial or on appeal, its additional, conclusory claim that the City failed to lay a proper foundation for Smith's testimony. The record clearly reflects Smith's qualifications as an accounting expert and that he had reviewed financial statements from UMB. We perceive no basis for rejecting his testimony on foundational grounds.

In short, the trial court's decision to exclude testimony so directly relevant to the issue at hand, especially in light of the fact that this testimony was the entire basis for the City's position at trial, was arbitrary and unreasonable, and it was clearly against the logic of the surrounding circumstances. Accordingly, the trial court abused its discretion in excluding that testimony. The trial court's judgment is, therefore, reversed, and the cause is remanded for a new trial on the sole issue of whether the disallowed interest expense deductions were "necessary expenses of operation" such as would be properly deductible from "gross profits" as authorized by § 92.240.[7]

ALL CONCUR.

**7.** Having reached this conclusion, we need not address Appellant's second point on appeal.