**Lee C. HUNT, Jr., Appellant,**

v.

**ESTATE OF Anna M. HUNT, et al., Respondent.**

**No. WD 73048.**

Missouri Court of Appeals, Western District.

Sept. 13, 2011.

Daniel S. Hobart, Raymore, MO, for appellant.

Teresa L. Christian–Bingham, Liberty, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge, and BRAD FUNK, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

Lee C. Hunt, Jr. appeals the judgment denying his claims for breach of contract, specific performance, unjust enrichment, quantum meruit, and conversion against the Estate of Anna M. Hunt and Billie A. Gammill, as personal representative of the estate and in her individual capacity (collectively, "Estate").[1] Lee contends he presented sufficient evidence to prevail on his claims. He also contends the circuit court erred in applying the parol evidence rule to exclude certain evidence. For reasons explained herein, we find no error and affirm the judgment in favor of the Estate.

---

1. For ease of reference, the remainder of this opinion refers to Lee C. Hunt, Jr., and Anna M. Hunt by their first names. No disrespect is intended.

## Factual and Procedural History

On June 8, 1992, Anna entered into a contract for deed to sell a lake house in Morgan County to Lee, who was her stepson. The contract provided Lee would pay Anna the total purchase price of $35,000, with interest at a rate of ten percent per annum over a period of 180 months. This resulted in a monthly payment of principal and interest in the amount of $376.13, which was due on the first day of each month starting July 1, 1992, and continuing until June 1, 2007. Under the contract, Lee was also responsible for buying premises insurance and for paying real estate taxes on the property. The contract included a time is of the essence clause which stated that, if Lee was sixty days late with a required payment, Anna had the option of declaring the amount he had already paid on the contract forfeited to her as liquidated damages for his breach of the contract. The contract further provided that, upon such default, Lee would become a month-to-month tenant and pay Anna $375 per month as rent for the property.

Lee made the monthly payments on the contract through April 2003. Lee did not make any payments in May or June 2003. As of mid-July 2003, he had not made the July payment and was past sixty days late on the May payment. On July 17, 2003, Anna's attorney sent a letter notifying Lee that, pursuant to the time is of the essence provision, the contract for deed was deemed forfeited and Anna would receive all further payments as rent. Anna's attorney also informed Lee that he owed rental payments for May, June, and July 2003 in the amount of $375 per month.

On July 21, 2003, Lee gave Anna a check for $1,219.40. This amount was $94.40 greater than the three months of rental payments he owed. Anna told Lee he had paid more than the rental amount due and she would apply the extra amount toward the next month's electric bill. Lee's August 2003 payment was for $376.13, the amount of the principal and interest payment under the contract for deed. Anna again told Lee he was supposed to pay only the rental payment of $375 per month and she would apply the extra amount toward the next month's electric bill. After the forfeiture, Lee did not pay the premises insurance premiums and real estate taxes, and Anna assumed responsibility for paying those items.

Over the next two years, Lee tried several times to convince Anna to reinstate the contract for deed or to enter into a new contract, but Anna would not agree to do so. Lee continued to rent the property until July 2005. At that time, Anna advised Lee she was selling the property and he had thirty days to vacate the premises. Lee vacated the property in August 2005 and filed suit against Anna to stop the property sale. In December 2005, Lee's attorney sent Anna a letter offering to settle the matter and complete the purchase of the property by paying her $8,675.85, the amount Lee believed was remaining on the contract for deed. The letter did not contain a check.

Anna died in April 2007. In January 2008, Lee filed the present suit against the Estate.[2] His petition asserted claims for breach of contract, specific performance, unjust enrichment, quantum meruit, and conversion.[3] In response, the Estate filed

---

2. The Estate's brief indicates Lee's 2005 lawsuit against Anna was dismissed without prejudice after her death. The record does not contain any pleadings or docket sheets from the prior lawsuit.

3. Lee's petition also included a claim for anticipatory repudiation, but he elected not to submit this claim to the court for determination.

a counterclaim against Lee for rent due and owing. Following a bench trial, the circuit court entered judgment in favor of the Estate on all of Lee's claims and in favor of Lee on the Estate's counterclaim. Lee appeals.

### SUFFICIENCY OF THE EVIDENCE

In Point I, Lee contends the circuit court erred in denying relief on his claims for breach of contract, specific performance, unjust enrichment, quantum meruit, and conversion because he presented sufficient evidence to prevail on these claims.

In this court-tried case, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded." *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo. App.2002). We defer to the circuit court's determination of the witnesses' credibility and the weight to be given their testimony. *Id.* The circuit court was "free to believe none, part, or all of the testimony of any witness." *Id.*

▇ "Because appellate courts are primarily concerned with the correctness of the result reached by the trial court, we are not bound by its rationale and may affirm the judgment on any grounds sufficient to sustain it." *Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo.App.2008). Thus, we will affirm the judgment if cognizable under any theory, regardless of whether the circuit court's reasons are wrong or insufficient. *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999).

### Breach of Contract

▇ Lee first contends he presented sufficient evidence to prevail on his breach of contract claim. To recover on a breach of contract claim, a plaintiff must prove these essential elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). The circuit court denied Lee's breach of contract claim after determining it was Lee, and not Anna, who committed the breach. The court found Lee committed the breach when he failed to make the May 2003 payment within sixty days as required by the contract. Substantial evidence supports this finding, as Anna testified in her deposition and Lee testified at trial that he did not make his May 2003 payment within sixty days as required by the contract's time is of the essence provision.

Nevertheless, Lee argues he presented sufficient evidence that Anna allowed him to cure his breach and continue the contract until August 2005, when she breached the contract by telling him to vacate the property. To support his argument, he relies upon his testimony that, after he received the notice of forfeiture, he had a phone conversation with Anna during which she reinstated the contract by telling him, "We'll go back to the way it was."

Lee's argument ignores our standard of review. In its judgment, the circuit court specifically mentioned Lee's testimony regarding Anna's alleged statement and found not only that Anna denied making this statement, but that Lee's testimony on the issue was not credible. Moreover, the court found Anna's actions after the breach were consistent with her deeming the contract forfeited. In particular, Anna

treated Lee's post-forfeiture payments as rent, assumed responsibility for paying the premises insurance premiums and real estate taxes, and told Lee's ex-wife in 2005 that Lee did not "own" the property because she had "foreclosed" on him in 2003.[4]

Deferring to the circuit court's credibility determination, we find Anna did not allow Lee to cure the breach and reinstate the contract. Because the contract was forfeited before Anna told Lee to vacate the property, Anna's efforts to vacate the property did not constitute a breach. The circuit court did not err in ruling in favor of the Estate on Lee's breach of contract claim.

### Specific Performance

Lee next contends he presented sufficient evidence to recover on his claim for specific performance. Contracts for deed, like the one in this case, "typically contain forfeiture clauses which provide that time is of the essence and that when a buyer defaults, the seller has the option to declare the contract terminated, retake possession of the premises, and retain all previous payments as liquidated damages." *Long v. Smith*, 776 S.W.2d 409, 413 (Mo. App.1989). General principles of contract law traditionally govern contracts for deed, and "courts have enforced forfeiture clauses on the assumption that they are carrying out the intent of the parties to the contract." *Id.*

In certain circumstances, Missouri courts have "judicially limited the forfeiture remedy by employing equitable principles, since specific performance of the contract for deed is a remedy generally

sought." *Id.* Defaulting buyers on contracts for deed have been granted specific performance "on the grounds of reasonableness or fairness, thereby allowing tardy payment of the full purchase price." *Id.* Some courts have granted specific performance after finding the defendant waived or was estopped from asserting prompt payment on the date specified in the contract. *Id.* The circuit court "is afforded much discretion in deciding whether to award the equitable remedy of specific performance." *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 699 (Mo.App. 2001). Specific performance "is not a matter of right but is a remedy applied by courts of equity depending upon the facts in a particular case." *Id.*

Lee asserts he was entitled to specific performance because Anna waived the time is of the essence clause through her conduct. He cites Anna's testimony that, over the course of the eleven years he was making purchase payments on the contract for deed, his payments were frequently between ten days and six weeks late. Yet, he notes, Anna accepted those late payments.

While it is true Lee had a pattern of making late payments, his payments were never sixty days late until the May 2003 payment. Thus, his late payments up to that point did not trigger the forfeiture provision. See *Long*, 776 S.W.2d at 414–15. Anna's acceptance of those prior late payments did not waive her right to enforce the time is of the essence clause once the delinquent May 2003 payment trig-

---

4. We also note that Lee's record of payment was consistent with forfeiture of the contract. Prior to the forfeiture, from July 1992 through April 2003, Lee routinely made payments for the contract amount of $376.13 monthly or $752.26 for two months when he fell behind. After the forfeiture in July 2003, Lee never made a payment for $376.13 or any multiple thereof. From August 2003 through July 2005, Lee's monthly payments ranged from $375.00 to $452.35. The reason for the variation in payments beyond the $375.00 monthly rental is not entirely clear, but Anna's testimony indicates that additional amounts were to be applied to utility bills for the property.

gered the forfeiture provision. Cf. *Randolph v. Ellis*, 240 Mo. 216, 144 S.W. 483, 484 (1912) (holding where contract stated the failure to pay a certain amount each month rendered contract void, parties' "long-continued conduct" of making and accepting payments at irregular intervals and in different amounts waived forfeiture provision).

█ Lee further argues Anna waived the time is of the essence clause by accepting his purchase price payments of $376.13 for at least two months after she sent the notice of forfeiture. The evidence in the light most favorable to the judgment was that Anna considered $375 of those payments rent and applied the remaining $1.13 toward the next month's electric bill. Anna's conduct did not waive the contract's time is of the essence clause.

█ Lee next asserts he was entitled to specific performance under the concept of equitable redemption. Equitable redemption is based upon the theory that "equity's ability to cure unfairness in the context of a contract for deed is analogous to the right of a mortgagor to redeem under a mortgage." *Long*, 776 S.W.2d at 414. But, just as a debtor under a deed of trust must tender full payment of the total amount due to accomplish statutory redemption, so must a purchaser under a contract for deed tender the full purchase amount to be entitled to specific performance. *Id.*

█ The party seeking specific performance on the basis of equitable redemption has the burden of proving tender by clear and convincing evidence. *Kasseb-aum*, 42 S.W.3d at 699. An announcement of readiness to settle the transaction or a premature offer to perform is not sufficient tender. *Id.* " 'A party seeking specific performance must have tendered everything that was due on his part, unless the tender was excused or waived by the seller's conduct.' " *Four Seasons Lakesites, Inc. v. HRS Props., Inc.*, 317 S.W.3d 193, 200 (Mo.App.2010) (citation omitted).

The circuit court denied Lee's specific performance claim after finding Lee failed to make a sufficient tender. The court found that, to be entitled to specific performance, Lee would have had to tender the balance due on the contract as of July 17, 2003, plus the real estate taxes for 2003, 2004, and 2005, and the premises insurance premiums for 2004 and 2005 when he attempted to make a tender of the balance due and owing on the contract in his letter of December 2005. On appeal, Lee argues his December 2005 offer to pay $8,675.85, the amount he asserted was the remainder of the purchase price, was sufficient tender. We disagree.

Under the contract, Lee was responsible for paying the real estate taxes and the premises insurance premiums for the duration of the contract. Thus, to make a sufficient tender in 2005, Lee had to tender the full amount of his unpaid portions of those contractual items in addition to the amount remaining on the purchase price. He did not do so.[5] The circuit court did not abuse its discretion in finding Lee did not make a sufficient tender. We find no error in the circuit court's ruling in

---

5. Lee did not offer to tender the full amount remaining on the purchase price as of July 17, 2003, the date Anna forfeited the contract. Lee does not explain how he arrived at his offer of $8,675.85, but we note that amount is slightly less than two years' worth of monthly purchase price payments. As of the date of the forfeiture, he had approximately four years remaining on the contract. The payments Lee made in the two years between the forfeiture and Anna's telling him to vacate the premises constituted rent and not purchase price payments.

favor of the Estate on Lee's claim for specific performance.

### Unjust Enrichment

 Lee contends he presented sufficient evidence to recover on his unjust enrichment claim. To establish a claim for unjust enrichment, a plaintiff must prove: "(1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo.App. 2010). The " 'most significant' " of these elements is the last element, the injustice of the defendant's retaining the benefit without paying for it. *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App.2000). "One thing the courts consider is whether any wrongful conduct by the defendant contributed to plaintiff's disadvantage." *Id.* The unjust retention of benefits "occurs only when benefits are conferred (a) in misreliance on a right or duty,[6] or (b) through a dutiful intervention in another's affairs, or (c) under constraint." *Id.* at 62 (internal quotation marks and citations omitted).

Lee failed to prove he conferred any benefit on Anna. Although Lee argues his purchase payments, taxes, insurance, and utilities payments were benefits, those items were his responsibility under the contract and, therefore, cannot constitute "benefits" in a claim for unjust enrichment. *See Howard*, 316 S.W.3d at 436 (stating where "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply").

 Lee also argues the improvements and maintenance he performed on the property benefited Anna. On this issue, the circuit court found that, while the property increased in value during the time Lee possessed it, the increase was not due to Lee's efforts but resulted instead from the general increase in the value of lakefront property at the Lake of the Ozarks during this time. Anna's testimony and the testimony of the Estate's real estate appraiser support this finding.

 Even if Anna did receive some benefit from Lee's purported improvements and maintenance to the property, Lee did not demonstrate Anna's retention of that benefit was unjust. Lee did not ask or tell Anna before he did any work on the property but instead told her about the work after it was completed. Also, Lee never asked Anna to reimburse him for his work, and she never agreed to pay him. Anna was nothing more than a passive beneficiary and, as such, cannot be deemed to have unjustly retained any benefit from his purported improvements and maintenance to the property. *See Graves*, 15 S.W.3d at 64.

Finally, Lee appears to argue that his monthly rental payments to Anna were benefits she unjustly retained after the breach. Like the purchase payments and payments for real estate taxes and premises insurance, the contract expressly provided for monthly rental payments if Lee chose to remain on the premises after forfeiture. Therefore, the rental payments cannot constitute "benefits" in a claim for unjust enrichment. *See Howard*, 316 S.W.3d at 436. Furthermore, Lee failed to demonstrate Anna's retention of the rental payments was unjust. Lee contends the unjust retention of these payments occurred when, after he breached the con-

---

**6.** In this context, the term "misreliance" means a mistake of fact. *Howard*, 316 S.W.3d at 436 n. 4.

tract in 2003, Anna allegedly told him, "We will go back to the way it was." He argues a reasonable person could interpret this statement to mean she intended to continue the sale of the property to him. He asserts he is entitled to relief based upon Anna's "leading him on" in this way.

Again, Lee's argument ignores our standard of review. As discussed *supra*, the court explicitly stated it did not believe Anna made the alleged statement to Lee reinstating the contract and it believed she continued to treat the contract as forfeited. Moreover, the record shows Anna communicated this to Lee multiple times. Anna testified in her deposition that, after the forfeiture, she told Lee on at least two occasions he owed only the $375 monthly *rental* payment and not the $376.13 monthly purchase price payment. She also testified she refused his repeated requests to reinstate the contract or draft a new contract.

Viewed in the light most favorable to the judgment, the evidence indicates Anna advised Lee, in July 2003, that the contract was forfeited due to his breach, and she considered his monthly payments after the forfeiture to be rental payments. Anna did not mislead Lee. With full knowledge of the forfeiture and of his change in status from a purchaser to a month-to-month tenant, Lee voluntarily continued to make rental payments to Anna for two years. The court found Lee hoped that, during those two years, "[he] could persuade [Anna] to reinstate the Contract or enter into a new Contract." That his hopes failed to materialize does not permit him to recover under a theory of unjust enrichment. See *id.* at 438 ("[a] venture voluntarily entered into, with known risks and with the expectation of a profit, cannot be compensated for via a claim for unjust enrichment"). The circuit court did not err in ruling in favor of the Estate on Lee's unjust enrichment claim.

### Quantum Meruit

Lee next contends he presented sufficient evidence to recover on his claim for quantum meruit. In this claim, Lee sought compensation for the improvements and repairs he allegedly made to the property between 1992 and 2003. " 'A quantum meruit claim is based upon a legally implied promise that a party will pay reasonable compensation for valuable services or materials provided at the request or with the acquiescence of that party.' " *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 205 n. 6 (Mo.App.2006) (citation omitted). To prevail on a quantum meruit claim, a plaintiff must prove: (1) he provided the defendant services upon request or with the defendant's acquiescence; (2) the services he provided were of a certain and reasonable value; and (3) the defendant " 'refused to pay for such services after demand' " by the plaintiff. *Moran v. Hubbartt*, 178 S.W.3d 604, 609 (Mo.App.2005) (citation omitted). Thus, "[t]o recover under quantum meruit, it is the plaintiff's burden to show that [his] services benefited the defendant" and the amount of that benefit. *Miller v. Horn*, 254 S.W.3d 920, 925 (Mo.App.2008).

The circuit court denied Lee's quantum meruit claim on the same basis it denied his unjust enrichment claim. Specifically, the court found the only reason the property's value increased from $70,000 in 1992 to $80,000 in 2010 was because lakefront property at the Lake of the Ozarks generally appreciated in value during this time. The court did not believe any of the increase in value could be attributed to Lee's efforts. In fact, the court found the condition of the property deteriorated substantially from 2001 to 2005. Thus, the court essentially found Lee failed to prove his services benefited Anna.

The record supports the court's findings. Anna testified she considered most of Lee's changes to the property to be "hindrances." Indeed, the evidence in the light most favorable to the judgment indicates the deck Lee built was unsafe, the retaining wall he built blocked the driveway and parking area, the paint he applied to the inside of the lake house was applied incorrectly and was peeling off, and the docks he remodeled had to be removed from the water because of violations of the Ameren Union Electric Dock Regulations.

 Even if Anna did receive some benefit, Lee failed to establish the reasonable value of his purported improvements. Lee's only evidence as to the value of his purported improvements was a collection of receipts for some materials and his estimate of the cost of other items for which he had no receipts. "Proof of reasonable value is not accomplished simply by reciting the bill." *Id.* "There must be evidence establishing the objective reasonableness of plaintiff's charges." *Id.* There was none in this case. Moreover, Lee failed to present evidence that Anna refused to pay for his services upon his demand. In fact, Lee testified he never asked Anna to reimburse him for any of the work he performed. The circuit court did not err in ruling in favor of the Estate on Lee's quantum meruit claim.

### Conversion

 Lastly, Lee argues he presented sufficient evidence to prevail on his claims for conversion of the personal property located in the lake house and on the property.[7] " 'Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights.' "

*Amond v. Ron York & Sons Towing,* 302 S.W.3d 708, 712 (Mo.App.2009) (citation omitted). To prevail on a claim for conversion, the plaintiff must show: (1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession. *Mackey v. Goslee,* 244 S.W.3d 261, 264 (Mo.App.2008). The plaintiff must establish he had the right to possession of the converted property at the time of the alleged conversion to recover on a conversion claim. *Mertz v. Blockbuster, Inc.,* 32 S.W.3d 130, 132–33 (Mo. App.2000).

The circuit court denied Lee's conversion claims after finding he failed to prove he had the right to possess the property. The personal property Lee alleged was converted consisted of items that were originally in the lake house or on the property when Lee and Anna entered into the contract in 1992. Lee contends the contract for deed included the sale of this personal property along with the real property because the contract's premises assurances provision stated:

> Seller makes no representation or warranty whatsoever regarding the condition of the premises (including all personal property and fixtures to remain with the premises). Buyer represents that Buyer has inspected and knows the condition of the premises and agrees to accept the premises in its present condition, "as is."

This provision, however, concerned only Anna's warranty, or lack thereof, as to the condition of the real property and any personal property that happened to be lo-

---

7. Lee asserted claims for conversion by failure to surrender possession and conversion by tortious taking.

cated on it. The contract for deed did not contain any language stating personal property was part of the sale and, in fact, Anna testified she made it clear to Lee that the personal property was to remain hers.

Even if the contract could be read to have included the pre-existing personal property in the sale, Lee failed to prove he had any right to possess the property after he breached the contract, Anna deemed the contract forfeited, and she told him to vacate the property. At that point, Lee had no right to possess the pre-existing personal property. The circuit court did not err in ruling in favor of the Estate on Lee's claims for conversion. Point I is denied.

### EXCLUSION OF CHECKS

■ In Point II, with regard to his breach of contract claim, Lee asserts the circuit court erred in excluding evidence of two checks he had written to Anna.[8] The circuit court has broad discretion to admit or exclude evidence. *UMB Bank, NA. v. City of Kansas City*, 238 S.W.3d 228, 231 (Mo.App.2007). When the court excludes evidence, the issue for us is not whether the evidence was admissible but is instead whether the court abused its discretion in excluding it. *Id.* An abuse of discretion occurs where the ruling " 'is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (citation omitted).

Lee wrote the two checks to Anna before the contract was signed. He wrote the first check in the amount of $1,500 on April 9, 1992, and the second check in the amount of $2,000 on June 8, 1992, the day the contract was signed. Anna negotiated both checks. Lee contends the checks constituted evidence of a $3,500 down payment toward the $35,000 purchase price of the property. He argues that, because of this alleged down payment, he was not late on his May 2003 payment but was instead just over nine months ahead on his payments.

The circuit court excluded the checks—for purposes of the breach of contract claim—after finding their admission would violate the parol evidence rule. The purpose of the parol evidence rule is "to preserve the sanctity of written contracts." *Kenney v. Vansittert*, 277 S.W.3d 713, 719 (Mo.App.2008). "If a written contract appears within its four corners to be complete, then the parol evidence rule operates to exclude evidence contradicting the instrument." *Id.* Thus, the rule "prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission." *Simpson v. Simpson*, 295 S.W.3d 199, 205 (Mo.App.2009) (internal quotation marks and citation omitted).

The parties' contract for deed does not mention a down payment. Indeed, a down payment would contradict the contract's express payment terms. When the property's purchase price of $35,000 is amortized over a period of 180 months at the interest rate of ten percent annually, as the contract provides, it results in the contract's stated monthly payments of $376.13. Nevertheless, Lee argues the down payment was omitted from the contract by mutual mistake of the parties. He asserts the court should have admitted the checks, reformed the contract to in-

---

8. The circuit court said it would consider the checks with regard to only Lee's unjust enrichment claim.

clude his down payment, and considered the down payment as evidence that he did not breach the contract.

 " 'Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.' " *Simpson*, 295 S.W.3d at 205 (quoting *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007)) (internal quotation marks and citations omitted). " 'A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption of vital fact upon which they based their bargain.' " *Id.* (citation omitted). Clear, cogent, and convincing evidence is required to support reformation for mutual mistake. *Id.*

The only evidence supporting Lee's claim of mutual mistake is his bare testimony that he and Anna had verbally agreed the two checks would constitute a down payment on the $35,000 purchase price. The circuit court did not find this to be clear, cogent, and convincing evidence to support reformation of the parties' unambiguous contract for deed. We do not find the circuit court's decision so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. Because we find no abuse of discretion, Point II is denied.

## CONCLUSION

We affirm the circuit court's judgment.

All Concur.