# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1786

_____

Smith Flooring, Inc.

*Plaintiff - Appellant*

v.

Pennsylvania Lumbermens Mutual Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 13, 2012
Filed: Apri 26, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Smith Flooring, Inc. ("Smith Flooring") obtained commercial property insurance coverage from Pennsylvania Lumbermens Mutual Insurance Company ("Pennsylvania Lumbermens") from 2004 to 2009. Each year, Pennsylvania Lumbermens issued Smith Flooring a new annual policy with endorsements that excluded certain property from coverage. An endorsement excluding certain buildings from coverage was omitted from the 2007–08 policy and again from the 2008–09

policy. One of those buildings, known as the Pine Warehouse, subsequently collapsed, and Smith Flooring submitted a claim for the loss, which Pennsylvania Lumbermens denied. Smith Flooring filed suit, alleging breach of contract and seeking a declaratory judgment as to the terms of the insurance policy. Pennsylvania Lumbermens removed the case to the district court[1] and counterclaimed for reformation of the insurance policy. The court submitted the claims for breach of contract and reformation to a jury, which returned a verdict for Smith Flooring on both claims. The district court granted Pennsylvania Lumbermens's motion to alter the jury verdict, but it then ruled that it would treat the jury's verdict as merely advisory under Federal Rule of Civil Procedure 39. The court then substituted its own findings of fact and conclusions of law for the jury's verdict. The court concluded that clear, cogent, and convincing evidence showed that the insurance policy did not accurately set forth the agreement of the parties. The court reformed the policy to reflect that the Pine Warehouse was not covered. Finding no reversible error, we affirm.

## I. *Background*

Smith Flooring manufactures and sells hardwood flooring. It operates a manufacturing facility ("Location 1") near Mountain View, Missouri, which includes numerous buildings. One of the buildings at Location 1 is known as the Pine Warehouse.[2]

Smith Flooring used Steven Young ("Young") of Wausau Signature Agency ("Wasau") as its insurance agent. Young sought and obtained insurance for Smith Flooring from Pennsylvania Lumbermens through Woodus K. Humphrey and

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[2]In some documents, the Pine Warehouse is referred to as the Storage Shed.

Company, Inc. ("Woodus Humphrey"), the issuing agent of Pennsylvania Lumbermens. Each year, Pennsylvania Lumbermens issued Smith Flooring a new annual policy that became effective on March 1. Each annual policy was issued with an endorsement titled "ADDITIONAL PROPERTY NOT COVERED." The policies for years 2004–05, 2005–06, and 2006–07 included an endorsement that excluded from coverage six buildings at Location 1, including the Pine Warehouse. However, the 2007–08 and 2008–09 policies did not list an endorsement excluding buildings at Location 1.

In January 2009, the Pine Warehouse collapsed under the weight of sleet and ice. Smith Flooring submitted a claim for the loss, which Pennsylvania Lumbermens denied. Smith Flooring filed suit against Pennsylvania Lumbermens in Missouri state court, alleging breach of contract and seeking a declaratory judgment as to the terms of the insurance policy. Pennsylvania Lumbermens removed the case to the district court and counterclaimed for reformation of the policy.

Pennsylvania Lumbermens filed a motion requesting a bench trial on its counterclaim for reformation. The court denied the motion and set the case for a jury trial on all issues. The case went to trial, and a jury found in favor of Smith Flooring on its breach-of-contract claim, as well as on Pennsylvania Lumbermens's counterclaim for reformation. The court issued an order and judgment consistent with the jury award to Smith Flooring of $300,000 in damages. Pennsylvania Lumbermens filed a motion to alter the jury verdict and a motion for post-verdict judgment as a matter of law. The district court granted Pennsylvania Lumbermens's motion to alter the jury verdict, finding that a $100,000 deductible and a $10,000 limit on debris removal should be applied to reduce the jury's damage award to $170,000.

Subsequently, the district court granted Pennsylvania Lumbermens's motion for judgment as a matter of law. The court found that it had erred in denying Pennsylvania Lumbermens's pretrial motion requesting a bench trial on its

counterclaim for reformation. The court ruled that it would treat the jury's verdict as merely advisory under Federal Rule of Civil Procedure 39. The court found that a new trial would be unnecessary and inefficient, as the court had already heard the evidence. It vacated the jury's verdict and, in accordance with Federal Rule of Civil Procedure 52(a), the court made its own findings of fact and conclusions of law, which it substituted for the jury's verdict. The court found that clear, cogent, and convincing evidence demonstrated that the insurance policy did not accurately set forth the agreement of the parties, and it reformed the 2008–09 policy to reflect that the Pine Warehouse was not covered under the policy. The district court then ruled that, as a consequence, Smith Flooring's breach-of-contract claim failed.

Smith Flooring appeals the district court's grants of (1) Pennsylvania Lumbermens's motion for judgment as a matter of law on its breach-of-contract claim and (2) Pennsylvania Lumbermens's motion to reduce the jury's damage award by applying a $100,000 deductible and a $10,000 limit on debris removal.[3]

## II. *Discussion*
### A. *Common Issues*

"'Whether a party has a right to trial by jury in federal court is a question of law subject to de novo review.'" *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) (quoting *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir.1999)). The Seventh Amendment provides, in pertinent part, that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Because the Seventh Amendment applies only to "[s]uits at common law," *id.*, not every cause of action implicates this right.

---

[3]Because we affirm the district court's grant of Pennsylvania Lumbermens's motion for judgment as a matter of law, we do not reach the issue of whether the court abused its discretion in reducing the jury verdict by finding a $100,000 deductible and a $10,000 limit on debris removal damages.

"[S]uits for damages for breach of contract . . . were suits at common law with the issues of the making of the contract and its breach to be decided by a jury . . . ." *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 459 (1977). However, "[a]n action to reform a written instrument in accordance with the intent of the parties was exclusively equitable, thus a claim for reformation under the Federal Rules is triable to the court." *Great Atl. Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 978 (8th Cir. 1985). Here, Smith Flooring's claim for breach of contract is a claim at law, whereas Pennsylvania Lumbermens's counterclaim for reformation is in equity. Therefore, the Seventh Amendment right to a jury trial attaches to Smith Flooring's breach-of-contract claim.

The constitutional right to a jury trial must be preserved when the litigation involves legal and equitable claims with common issues. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73 (1962) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959)). "[T]he normal practice is to try both claims to a jury. In this way, the jury's verdict will conclusively settle these common issues, and only issues peculiar to the equitable claim will be left to be decided by the judge." *Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990) (citations omitted).

Here, in granting Pennsylvania Lumbermens's post-verdict motion for judgment as a matter of law, the district court found that there were no issues common to both the legal and equitable claims. The court noted Pennsylvania Lumbermens's acknowledgment that the policy, as written, provided coverage for the Pine Warehouse. The court also noted that Pennsylvania Lumbermens agreed that if the policy were not reformed, Smith Flooring would prevail on its breach-of-contract claim. Consequently, the court found that the dispositive issue at trial was whether the insurance policy should be reformed based on mutual mistake, which is an exclusively equitable remedy. As such, the court ruled that it had erred in its pretrial finding that the case must be tried to a jury, and it declared that Pennsylvania

Lumbermens's counterclaim for reformation of the policy should have been tried to the court.

The district court's ruling notwithstanding, we find that the breach of contract and reformation claims do involve a common issue, namely, what the terms of the *intended* contract actually were. Missouri law considers "the existence and terms of a contract" to be essential elements of a breach-of-contract action. *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc). Similarly, a "party seeking reformation must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intentions of the parties." *Brown v. Mickelson*, 220 S.W.3d 442, 448–49 (Mo. Ct. App. 2007) (quotation and citation omitted); *see also* Black's Law Dictionary (9th ed. 2009), defining reformation as "[a]n equitable remedy by which a court will modify a written agreement to reflect the actual intent of the parties." It is impossible for Pennsylvania Lumbermens to "show that the writing fails to accurately set forth the terms of the actual agreement" without first establishing what "the terms of the actual agreement" are. *Brown*, 220 S.W.3d at 448–49 (quotation and citation omitted).[4] But establishing what the "terms of the actual agreement" are is likewise essential to Smith Flooring's breach-of-contract claim.

The district court's order cited *Giant Eagle, Inc. v. Federal Insurance Co.*, 884 F. Supp. 979 (W.D. Pa. 1995), for the proposition that a damages claim and a reformation claim do not share common issues. But in *Giant Eagle* the parties stipulated that the sole issue to be litigated was the insurer's claim for reformation. *Id.* at 983–85. Here there was no such stipulation. Smith Flooring pursued its breach-of-

---

[4]The district court stated in ¶ 8 of its conclusions of law that the 2008–09 "policy does not accurately set forth the agreement between Smith Flooring and Pennsylvania Lumbermens that the Pine Warehouse be excluded from coverage." This conclusion only follows if the court determined what the terms of the intended contract were.

contract claim all the way to a favorable jury verdict. Even presuming that Pennsylvania Lumbermens stipulated that the incomplete written policy provided coverage for the Pine Warehouse, that stipulation left in controversy the terms of the *intended* agreement—an essential element of Smith Flooring's breach-of-contract claim. Furthermore, Pennsylvania Lumbermens counterclaimed for *reformation* of the written policy, thereby contending that the terms of the written policy were *different* from those of the intended agreement. Indeed, Pennsylvania Lumbermens's own pleading alleged that "[i]f there is coverage for . . . the Pine Warehouse under [the 2008–09 policy], then it . . . does not state the terms of the agreement between and the true prior intentions of plaintiff and defendant." We also note that Pennsylvania Lumbermens twice moved for judgment as a matter of law on Smith Flooring's breach-of-contract claim, once stating that "we don't believe that the plaintiffs have made a case, presented sufficient evidence to support their claim for breach of contract in this matter." The reformation and breach-of-contract claims were both in controversy here, so the present case is distinguishable from *Giant Eagle*.

Even with both claims in controversy and the common element of establishing the terms of the intended contract, it could still be that no common *issue* exists because the admissible proof differs in each instance. With respect to the breach-of-contract claim, the parol evidence rule bars admission of extrinsic evidence to vary or contradict the terms of an unambiguous and completely integrated written agreement. *N. Am. Sav. Bank v. Resolution Trust Corp.*, 65 F.3d 111, 114 (8th Cir. 1995) (applying Missouri law); *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. 1979) (en banc). Nevertheless, Missouri's parol evidence rule includes exceptions for mutual mistake, accident, or erroneous omission. *Craig*, 586 S.W.2d at 324 ("Parol evidence may not be used to vary or contradict terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission."); *accord N. Am. Sav. Bank*, 65 F.3d at 114. We are confident that this case falls into one of those exceptions. Thus, Missouri's parol evidence rule would not bar the jury from considering the same extrinsic evidence for

the breach-of-contract claim as would be available for the reformation claim when deciding what the terms of the intended contract are. Consequently, the breach-of-contract and reformation claims involve a common issue.

The district court erred in finding that there were no issues common to the parties' legal and equitable claims. We conclude that Smith Flooring had a Seventh Amendment right to a trial by jury on the common issue of what the terms of the intended contract were. The district court also erred in treating the jury's verdict as merely advisory under Federal Rule of Civil Procedure 39 insofar as this issue is concerned.

However, the district court's error does not necessitate reversal of its granting post-verdict judgment as a matter of law to Pennsylvania Lumbermens. First, "it is settled that Rule 50(b) [judgment as a matter of law] does not violate the Seventh Amendment's guarantee of a jury trial." *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 321 (1967) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940)). Second, as we shall now discuss, the evidence in this case was not sufficient to support the jury's verdict in Smith Flooring's favor.

B. *Sufficiency of the Evidence*

"In reviewing the sufficiency of the evidence to support the jury's verdict, we interpret the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion." *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 991 (8th Cir. 2008) (citing *Anderson Mktg, Inc. v. Maple Chase Co.*, 241 F.3d 1063, 1065 (8th Cir. 2001)).

The district court found that "clear, cogent and convincing evidence demonstrates that the policy does not accurately set forth the agreement between Smith Flooring and Pennsylvania Lumbermens that the Pine Warehouse be excluded from coverage." The court noted that "'[c]lear, cogent and convincing evidence is that

which instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved.'" (Quoting *In Interest of J.A.J.*, 652 S.W.2d 745, 748 (Mo. Ct. App. 1983).) We agree with the district court's assessment. In fact, we find that the evidence in favor of Pennsylvania Lumbermens is so clear, cogent, and convincing that no reasonable juror could have reached the opposite conclusion.

Young, an employee of Wausau, was Smith Flooring's insurance agent. Young testified that none of the documents associated with Smith Flooring's policies included a value for the Pine Warehouse because, in his "understanding, it was always excluded." He testified that the absence of a value for a building was "inten[ded] to show [that it] w[as] excluded from coverage." He explained that "[w]e would've assigned a value—or a value would've needed to be assigned to that in order to obtain coverage." Young testified that his "intention and understanding [of the 2007–08 policy] was the same as all previous policy years," namely that "[t]here was no coverage . . . ." of the Pine Warehouse. He affirmed that neither "Mr. Smith [n]or anybody from Smith Flooring ever asked [him] or directed [him] to obtain coverage for those buildings that had been excluded." Young did note that in January or February of 2008 he discussed with Jon Smith ("Smith"), the owner of Smith Flooring, the possibility of adding coverage for the Pine Warehouse. Nevertheless, he testified that it was only sometime after March 1, 2008, the effective date of the 2008–09 policy, that Smith "requested or agreed . . . we should add coverage for that particular building." Young affirmed that, "when the policy period began for [the 2008–09 policy] on March 1st, 2008, at that time it was [his] intention and understanding that the [P]ine [W]arehouse was still to be excluded from coverage under the policy."

Mary Henke ("Henke") was Wausau's account manager for the Smith Flooring account. Her job responsibilities included communicating via email with Woodus Humphrey regarding changes in Smith Flooring's insurance coverage. Henke testified

that if Young had asked her to obtain coverage for the Pine Warehouse, she would have received "either a note or e-mail asking [her] to make the change. And then from there, [she] would have sent it off to the carrier, in this case, Woodus [Humphrey]." Henke explained that if she had sent a message to Woodus Humphrey regarding a change to Smith Flooring's coverage, "[i]t should have been part of [Wausau's] file" on Smith Flooring's coverage. Furthermore, she testified that a change in coverage would have necessitated an email discussion between her and Woodus Humphrey regarding the effect on premiums and other changes. Nevertheless, Henke had no "recollection that [she] sent or received e-mails . . . to and from Woodus Humphrey at the direction of Steve Young."

Lora Roberts ("Roberts") was a customer service representative for Woodus Humphrey. Roberts prepared Smith Flooring's 2007–08 insurance policy using information from the previous year's policy, as well as information that Henke supplied to her. During direct examination, Roberts observed that the endorsements in the 2007–08 policy differed from those in the 2006–07 policy. She noted that "the . . . buildings at [L]ocation 1 that were not covered were not included on th[e] endorsement" for the 2007–08 policy. Roberts acknowledged that she had prepared the endorsements for the 2007–08 policy and that she had "intend[ed] to put [the endorsements] on there," but she simply "overlooked typing them on." She stated that the endorsements for the buildings at Location 1 were not included in the 2008–09 policy either. To account for that omission, she explained, "I would have had the previous year's policy in front of me as I was typing the new one and saw there was nothing on it and didn't attach it to this policy." Her intention was "to exclude those buildings from coverage [by putting them] on the endorsement." She testified further that she did not "receive a request from Mary Henke or anyone else from Wausau Agency" to add coverage for the Pine Warehouse. Furthermore, she explained that if she had "received such a request, [there] would . . . have been a record in [her] file," yet she had examined her file "[n]umerous times" and had "found nothing."

Finally, Smith testified that Young had the authority to act for Smith Flooring to obtain insurance. He testified that no person other than Young ever contacted Woodus Humphrey or Pennsylvania Lumbermens to request coverage for the Pine Warehouse. Smith stated that he "assumed that [the buildings] were all covered under the blanket provision of the policy." Furthermore, Smith testified as follows:

Q. And do you remember any specific conversations with Steve Young in 2006 or 2007 about coverage?

A. I do remember one—one conversation when we were talking about coverages and were mentioning some of the buildings, and I said, "Well, they're all covered under the blanket provision of the policy."

And I'm not sure exactly what his response was, but it was something like, Well, that's—we'll make that so or it is so, or something. I don't remember exactly how the conversation went. But we did talk about those things, and we talked about my understanding of what the blanket provision of the policy meant.

Q. All right. And what was your understanding of how the blanket coverage provision worked?

A. That we had a blanket coverage that covered all the buildings on the property. If they were—there were years where they were listed as excluded or not listed or something. We had $100,000 deductible. It was my understanding that that meant that those buildings were probably worth less than $100,000.

"[I]nterpret[ing] the record in a light most favorable to the prevailing party," *Structural Polymer Grp., Ltd.*, 543 F.3d at 991, we agree with the district court that no reasonable juror could have found that the 2008–09 policy "accurately set[s] forth the agreement between Smith Flooring and Pennsylvania Lumbermens that the Pine Warehouse be excluded from coverage." Employees of the agents of both Smith Flooring and Pennsylvania Lumbermens presented unequivocal and uncontradicted

-11-

testimony sufficient to support findings that the absence of the exclusion endorsement for the buildings at Location 1 in the 2007–08 and 2008–09 policies were inadvertent omissions. Smith's testimony regarding his assumptions and "understanding of how the blanket coverage provision worked" are not sufficient to enable a reasonable juror to conclude otherwise. The clear intent of the parties originally was to exclude the Pine Warehouse from coverage. The inadvertent omission of an exclusion endorsement created only the appearance of coverage; it did not provide proof of a request for coverage or of payment therefor. The provisions of the written policy sans endorsement did not reflect the agreement of the parties that there was no coverage for the Pine Warehouse in January 2009.

## C. *Breach of Contract*

Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney*, 304 S.W.3d at 104. Because there was no coverage for the Pine Warehouse, it follows that Pennsylvania Lumbermens did not breach its contract in denying Smith Flooring's proof of loss. *See, e.g.*, *id*. With no breach, Pennsylvania Lumbermens owes Smith Flooring no damages.

## D. *Reformation*

Under Missouri law, "[a] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption of vital fact upon which they based their bargain. Clear, cogent, and convincing evidence is required to support reformation for mutual mistake." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 115 (Mo. Ct. App. 2011) (quotation and citations omitted). Furthermore,

> A court may reform a written contract when the writing evidencing the
> contract fails to correctly reflect the agreement. . . . The party must show

the written contract does not accurately set forth the terms of the agreement actually made, or does not incorporate the true prior intentions of the parties. *Moreland v. State Farm Fire and Casualty Co.,* 662 S.W.2d 556, 561 (Mo. App. 1983); Restatement (Second) of Contracts § 155 (1981).

*Kopff v. Econ. Radiator Serv.*, 838 S.W.2d 449, 452 (Mo. Ct. App. 1992).

We hold that the district court was correct to find that "clear, cogent and convincing evidence demonstrates that the policy does not accurately set forth the agreement between Smith Flooring and Pennsylvania Lumbermens that the Pine Warehouse be excluded from coverage." Consequently, the district court did not err in reforming the policy.

## III. *Conclusion*

Because we conclude that the district court did not err in granting judgment as a matter of law to Pennsylvania Lumbermens on the breach of contract and reformation claims, we affirm.

_____